## S12A0075. JETT v. JETT.
(727 SE2d 470)

HINES, Justice.

This Court granted the application for discretionary appeal of Bryan A. Jett ("Husband") from the trial court's order on a petition for contempt in this divorce case. For the reasons that follow, we affirm in part and reverse in part.

Husband and Nikita S. Jett ("Wife") were divorced on October 3, 2007. The decree of divorce incorporated a settlement agreement, which provided that

> the marital residence property [Marital Residence] . . . will be placed on the market for sale at a price that is mutually agreeable to both parties. The parties agree that all net proceeds, after closing costs and satisfaction of any and all liens, from the sale of the Marital Residence will be divided equally (50/50) between Wife and Husband at the time of closing. Until the time of closing, Husband will be responsible for all expenses on said Marital Residence, including mortgage, insurance taxes, utilities and upkeep . . . . The parties agree that, should the Marital Residence not sell within two (2) years from the date of this [agreement], Wife shall Quit Claim her interest in the Marital Residence to Husband, and Husband shall (1) own the Marital Residence free and clear from any claim from Wife, (2) refinance the Marital Residence, and (3) pay Wife one-half of the equity in the Marital Residence at the time of refinancing.

Husband placed the marital residence on the market, but it did not sell within two years. He remarried and purchased another house, which was titled in both his name and that of his new wife; this home was encumbered by a $315,000 debt, which was solely in Husband's name. Husband's subsequent attempts to refinance the marital residence were unsuccessful, and Wife filed her petition for a finding of contempt. At two hearings on the petition, evidence was presented that: Husband's debt on his new house negatively impacted his debt-to-income ratio and he would not be able to "qualify for two homes at this point so there's no way that anybody is going to let him refinance a house or buy another home"; the marital residence was worth $101,000, and the outstanding debt on that house was $158,000; there was no reasonable expectation that a lender would refinance the marital residence under these circumstances; Husband had continuously listed the house for sale; the marital residence was listed for sale at the time of the second hearing; and before the second hearing, Husband had executed a two-year lease purchase agreement with a tenant who had previously rented the marital residence for over a year.

The trial court's written order found Husband in contempt and ordered him incarcerated for five days. The order set forth that:

> Upon his release . . . [Husband] shall sell or liquidate all available accounts and property and shall pay down the mortgage at issue. The only way to know if [he] can refinance this property in his own name is to require that he pay down the mortgage to the greatest extent possible. In doing so, he will potentially be in a position to refinance the former martial residence in his own name, or allow the tenant to qualify for a mortgage herself.

The order further stated:

> [Wife] has expressed concerns about her ability to buy a home for herself, as well as concerns about her [security] clearance when her employer, the Federal Government, checks her financial status. . . . Should there be any deficiency owed as a result of the sale of the marital residence, [Husband] shall be responsible for, and shall hold [Wife] harmless, for any deficiency.

1. There was no abuse of discretion in the trial court's finding that Husband was in contempt of his obligation to refinance the house. Evidence authorized the court's conclusions that Husband's

willful actions of purchasing another house, and entering into significant debt in doing so, prevented him from fulfilling his obligations under the divorce decree, and that Husband had knowledge of this. See *Pate v. Pate*, 280 Ga. 796, 798 (3) (631 SE2d 103) (2006); *Davis v. Davis*, 250 Ga. 206, 207 (296 SE2d 722) (1982).

2. Husband contends that the trial court's order improperly modified the settlement agreement that was incorporated into the divorce decree. " 'While the trial court has broad discretion to determine whether the decree has been violated and has authority to interpret and clarify the decree, it does not have the power in a contempt proceeding to modify the terms of the agreement or decree.' [Cit.]" *Roquemore v. Burgess*, 281 Ga. 593, 594 (642 SE2d 41) (2007). "The test to determine whether an order is clarified or modified is whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification." *Cason v. Cason*, 281 Ga. 296, 297 (637 SE2d 716) (2006) (Citation and punctuation omitted.). "It is the function of the court to construe the contract as written and not to make a new contract for the parties." *Roquemore*, supra at 595 (Citation and punctuation omitted.).

The settlement agreement specified that the net proceeds of any sale of the marital residence would be divided equally between the parties, and that if refinancing was necessary, one-half of the equity in the house would be paid from Husband to Wife; nowhere in the agreement was it contemplated that, instead of an equal division of the marital residence, the division of the proceeds from the sale or refinance of the marital residence would be *unequal* in the event that the property was not worth the debt owed on it. Yet, the trial court's contempt order sets forth just such an unequal division; under it, Husband is assigned all risk of any deficiency, and is ordered to hold Wife harmless for such a deficiency. This is clearly a modification of the property division set forth in the settlement agreement.

Further, the trial court's directive that Husband "shall sell or liquidate all available accounts and property and shall pay down the mortgage" is not simply a clarification or interpretation of the decree. In addition to its provisions addressing the marital residence and other identified items of property, the settlement agreement stated that:

> Husband shall retain undisputed title to and ownership of that property, real and personal (tangible and intangible), presently owned by and possessed by Husband and that [sic] Wife shall not make any claim of any nature whatsoever to

said property, and Wife shall not make any claim of any nature whatsoever to any property acquired in the future by Husband.

This Court has established a " 'firm rule . . . against modifying the property division provisions of a final divorce decree.' [Cit.] '(W)e have not allowed trial courts later to compel a party who was awarded a specific asset to sell or otherwise convert that asset in order to comply with some other provision of the decree.' [Cit.]" *Doane v. LeCornu*, 289 Ga. 379, 381 (1) (711 SE2d 673) (2011). Thus, this directive also must be considered a modification of the settlement agreement and divorce decree. Id.

This result "does not mean that the trial court is left with no effective means of enforcing the divorce decree." *Doane*, supra at 381 (Punctuation omitted.). Husband is still obligated to refinance the marital residence, and the trial court has means to compel his compliance, including incarceration. Id. Indeed, Husband may attempt to purge himself of contempt by following the exact course set out in the trial court's directive. However, if that occurs, it will be based upon his decision to take that action in light of the financial circumstances he faces, rather than upon an impermissible modification of the decree. Id. at 382 (1).

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunstein, C. J., who concurs in part and dissents in part.*

HUNSTEIN, Chief Justice, concurring in part and dissenting in part.

While I agree that the trial court properly found the husband was in contempt, I dissent to the reversal of the trial court's conditions for the husband to purge himself of contempt. The majority has taken away the discretion of the trial court to enforce its own contempt orders, except by requiring jail time. In the end, the parties to a divorce action would be better served by permitting trial courts flexibility in interpreting the settlement to carry out the couple's intent, without having to resort to incarceration of the contumacious party.

In this case, the trial court's order did not improperly modify the divorce decree. Instead, the trial court was attempting to enforce the agreement by imposing reasonable conditions that required the husband to carry out his contractual obligations. Originally the parties intended to relieve the wife of any mortgage obligation and give her one-half of the equity in the house at the time of its sale or refinancing. Since the house has not been sold or refinanced, in large

part due to the husband's actions in buying a second home, the trial court through its contempt order required the husband to pay down the mortgage to determine whether refinancing would be possible and to indemnify the wife for any deficiency in the sale of the home. Because the trial court imposed reasonable conditions that were designed to place the parties in the position they would have occupied had the husband timely complied with the settlement agreement, I conclude that the trial court did not abuse its discretion. See *Cason v. Cason*, 281 Ga. 296 (1) (637 SE2d 716) (2006) (construing award of farm cooperative's equity accounts to wife as applying to stock and cash that husband received when the cooperative converted to a for-profit corporation); *Taylor v. Taylor*, 248 Ga. 723 (285 SE2d 695) (1982) (concluding trial court imposed reasonable conditions when it required husband to pay the wife one-half of the fair rental value of the garage property or vacate the property, place it on the market for sale, and divide the proceeds from the sale equally).

DECIDED MAY 7, 2012.

*Jacquelyn F. Luther*, for appellant.
*Berk & Moss, Stephen J. Berk*, for appellee.