S13A1292. ZIYAD v. EL-AMIN.
(750 SE2d 337)

BLACKWELL, Justice.

Karim J. Ziyad and Fatima El-Amin were divorced in March 2009, and Ziyad was awarded a certain residential property. To hold El-Amin harmless from the indebtedness on that property, Ziyad was ordered to refinance the indebtedness in his own name within six months or to sell the property to pay off the indebtedness.[1] He failed, however, to do either of these things, and so, in October 2012, El-Amin filed a motion for contempt. After a hearing, the trial court found Ziyad in contempt, and to purge the contempt, the court ordered him to put the property up for sale without delay. In addition, the court found that "payments toward the principal of the mortgage will have to be made so that the home can [sell]," and based on that finding, the court ordered Ziyad to make certain payments toward the principal of the indebtedness until the property is sold or the indebtedness otherwise is repaid. Ziyad appeals, contending that the trial court improperly modified the final decree when it ordered him to pay down the principal. With that contention, we disagree, and we affirm the judgment below.

It is settled law, of course, that a court cannot modify a final decree of divorce on a motion for contempt. *Floyd v. Floyd,* 291 Ga. 605, 605-606 (1) (732 SE2d 258) (2012). See also *Jett v. Jett,* 291 Ga. 56, 58 (2) (727 SE2d 470) (2012); *Greenwood v. Greenwood,* 289 Ga. 163, 164 (709 SE2d 803) (2011). But a court can interpret and clarify

---

[1] In this respect, the decree provided:

[Ziyad] shall be responsible for the timely payment of the mortgage on the property, taxes, and insurance. . . . [He] shall refinance the property out of [El-Amin]'s name with[in] six (6) months from the date of the final decree. In the event [Ziyad] fails to refinance the property and take [El-Amin]'s name off the property, the property shall be put up for sale. All proceeds from the sale shall first go towards paying off the debts and liens associated with the property; any additional proceeds shall be awarded to [Ziyad].

the final decree. *Floyd*, 291 Ga. at 606 (1). And a court can "craft a remedy for contempt, including remedying harm caused to an innocent party by the contemptuous conduct." *Smith v. Smith*, 293 Ga. 563, 564 (1) (748 SE2d 456) (2013) (citations and punctuation omitted). See also *Greenwood*, 289 Ga. at 164. As we have explained, "a trial court has broad discretion to enforce the letter and spirit of the decree, but the court must do so without modifying the original judgment that is being enforced." *Darroch v. Willis*, 286 Ga. 566, 570 (3) (690 SE2d 410) (2010).

In this case, the decree unambiguously requires Ziyad to put the property up for sale.[2] And Ziyad admitted that he was required under the decree to pay off all debts and liens associated with the property in connection with its sale.[3] The trial court reasonably understood these requirements to mean that Ziyad must put the property up for sale upon terms that make it salable, and to the extent that the outstanding indebtedness renders it unsalable, Ziyad was responsible for making it salable. See *Webb v. Webb*, 245 Ga. 650, 652 (2) (266 SE2d 463) (1980) ("[T]he law does not require a useless act."). The court also found — a finding of fact that Ziyad does not dispute on appeal[4] — that the property is not salable now and could be sold only

---

[2] It is undisputed that Ziyad did not refinance the indebtedness in his own name within six months of the final decree. Accordingly, under the plain terms of the decree, Ziyad forfeited his right to refinance and keep the property. See note 1, supra. That the decree unambiguously requires Ziyad to sell the property distinguishes this case from *Floyd*, where the trial court on contempt ordered the husband to quitclaim real property to his wife, but the decree made no provision for the husband to do so. See 291 Ga. at 606 (1). It also distinguishes this case from *Darroch*, where the trial court on contempt ordered the husband to sell the marital residence, but "nothing in the decree explicitly or implicitly required him to sell the house to satisfy the condition that he remove [the wife]'s name from the mortgage." 286 Ga. at 571 (3). In addition, it distinguishes this case from *Roquemore v. Burgess*, 281 Ga. 593 (642 SE2d 41) (2007), where the trial court on contempt ordered the husband to sell the marital residence, but again, the decree itself did not require the husband to do so. See id. at 595.

[3] This is not a case, therefore, in which both parties were to share the risk that the indebtedness on the property might exceed the price for which the property could be sold. This circumstance distinguishes this case from *Jett*, where the trial court on contempt ordered the husband to hold the wife harmless from any deficiency of the sale price to satisfy the indebtedness, but under the decree, both parties were to share the risk of such a deficiency. See 291 Ga. at 58 (2). Unlike *Jett*, the trial court in this case did nothing to alter the economic allocation of risk in the decree. Also unlike *Jett*, the trial court here did not require Ziyad to use any particular asset – much less a specific asset awarded to Ziyad in the divorce – to pay down the indebtedness.

[4] Nor could he dispute this finding, insofar as no transcript of the hearing on the motion for contempt appears in the record. In the absence of a transcript, we could not say that the trial court clearly erred with respect to its findings of fact, even if Ziyad argued otherwise. See *Alstep, Inc. v. State Bank and Trust Co.*, 293 Ga. 311, 313 (2) (745 SE2d 613) (2013) ("[B]ecause there is no transcript of the evidentiary hearing, we must presume that there was sufficient evidence presented to support that finding." (Citation omitted)).

if the principal were paid down. Accordingly, the court ordered Ziyad to pay down the principal to purge his contempt.[5]

We cannot say that the trial court erred when it understood the decree to require the sale of the property or when it understood Ziyad to bear responsibility for making the property salable. Nor can we say that the trial court clearly erred when it found — as a fact that Ziyad does not dispute — that the property can be sold *only if* the principal of the indebtedness is paid down. All together, these findings lead inescapably to the conclusion that Ziyad is required by the decree to pay the principal down to the extent necessary to render the property salable. The trial court did not err when it ordered him to do just that.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 21, 2013.

*Meriwether & Tharp, Patrick L. Meriwether, Melissa A. Tracy,* for appellant.

*Fatima A. El-Amin,* pro se.

---

[5] More specifically, the trial court ordered Ziyad to pay $12,000 toward the principal by January 1, 2013 to purge his contempt, and it further ordered him thereafter to pay $12,000 annually toward the principal "until the house is sold or the note paid in full." Notably, Ziyad takes issue with neither the finding of contempt nor the *amount* that the trial court ordered him to pay toward the principal. Instead, he takes issue only with the fact that the trial court ordered him to pay down the principal.