In the Supreme Court of Georgia

Decided: March 25, 2016

S15A1927.  JONES v. JONES.
S15A1928.  JONES v. JONES.

HUNSTEIN, Justice.

These appeals, related to the enforcement of a 1998 Cobb County divorce decree, arise from an October 2009 order on a petition for contempt filed by Denita Jones ("Wife").  In the October 2009 order, the trial court found Nolan Jones ("Husband") in willful contempt regarding his child support obligations, calculating his arrearage at over $119,000.  We granted both parties' respective applications for discretionary appeal to address various aspects of this order.[1]  Though we affirm the trial court's general finding of contempt, we conclude that the trial court erred in revisiting previously adjudicated arrearages and reverse the order to the extent it did so.  We also conclude that the court erred in calculating the most recently accrued arrearage, and we reverse that portion of

---

[1] Though the parties' applications were granted on November 18, 2009, the trial court record was not transmitted to this Court for docketing until August 2015.  The record is silent regarding the reason for this extraordinary delay.

the order and remand for a re-determination of that arrearage consistent with the terms of the parties' divorce decree. In light of these dispositions, we also reverse the order to the extent it directed Husband to purchase a life insurance policy. Finally, we conclude that the trial court's attorney fee award was not excessive and therefore affirm that portion of the order.

Under the 1998 divorce decree, which incorporated a settlement agreement between the parties, Wife was awarded primary custody of the parties' three minor children, and Husband was required to pay a base sum of $986 per month in child support, which constituted 28% of Husband's then-current annual income of $42,000, plus that same percentage of any annual income Husband earned in excess of $42,000, up to $85,000.[2] Any increase in

---

[2]In pertinent part, the child support provisions provide:

[T]he Husband shall be responsible to the Wife for the sum of $986.00 per month for the support of the children. This child support has been calculated in consideration of the Husband's present income of $42,000.00 per year. In addition to this sum, the Husband shall pay 28% of any monies over $42,000.00 up to $85,000.00 per annum as child support.

In addition, the applicable percentage used in calculating the support payment was to decrease upon the emancipation or aging out of each child:

The percentage of child support will be . . . 28% while it is paid for three children, 25% at such time it is paid for two children, and 20% at such time it

the amount of monthly child support in accordance with this provision was to be self-executing, and Husband was required to provide his tax returns and related documentation for verification of his income.

In 2002, Husband filed a petition for modification of custody and child support, and Wife counterclaimed for contempt. In an order issued in October 2004, the trial court, inter alia, declined to modify child support and found Husband in contempt for failing to make the required child support payments and failing to provide the information necessary to calculate the amounts owed. The trial court determined that Husband was in arrears in the principal amount of $85,676; together with interest accruing at the rate of 1% per month, Husband's total arrearage was set at $121,573.76. Though a follow-up hearing was held in November 2004, at which the court apparently made oral rulings regarding a purge schedule, such rulings were never memorialized in a written order.[3] No further proceedings were held with respect to this contempt petition.

_____

is paid for one child.

[3]Though it is apparent that such a hearing did take place, the transcript from such hearing does not appear in the record.

In June 2006, Wife initiated a new contempt proceeding,[4] in which she claimed that Husband had failed to pay his previously adjudicated arrearage and, with the exception of a single payment of $986, had made no child support payments for the months since then. The trial court ultimately entered an order in July 2007 in which it (1) reaffirmed the $85,676 arrearage as set forth in the October 2004 order; (2) found Husband in arrears in an additional amount of $66,456, accruing from the October 2004 order through June 2007; and (3) awarded interest in the amount of 7% per annum on both of these arrearage amounts, beginning 30 days thenceforth.[5] This order thus, in effect, vacated the October 2004 order to the extent it had awarded interest on the initial arrearage.[6]

---

[4]This action was assigned to a different trial judge than the earlier modification and contempt proceeding.

[5]The statute governing awards of interest on past-due child support was amended, effective July 1, 2006, to change the applicable interest rate from 12 percent per annum to 7 percent per annum. Ga. L. 2005, p. 224, §§ 3, 13.

[6]While the record reflects that Husband filed a timely motion to set aside or for new trial, there is no indication as to its disposition. Given the history of the case since then, we assume that this motion was either denied or abandoned. In addition, the record reflects that Wife sought and was granted a discretionary appeal in the Court of Appeals and thereafter filed a timely notice of appeal in the trial court. Setting aside the issue of whether the Court of Appeals had jurisdiction to grant Wife's application in the first place, see Ga. Const. of 1983, Art. 6, Sec. 6, Par. 3 (6) (appellate jurisdiction over divorce and alimony cases lies in Supreme Court), it is clear from the record that, as of September 2009, Wife had abandoned the appeal, and

4

In December 2007, as a result of continuing non-compliance, Husband was incarcerated; he was released in February 2008, subject to various conditions, after paying a purge amount of $6,486. Wife subsequently moved to have Husband incarcerated again for non-compliance, and in October 2009, the trial court, following a hearing, entered the order that is the subject of this appeal. In the October 2009 order, the trial court undertook a review of Husband's child support obligations and payments from 1998 forward, relying both on findings and evidence presented in connection with the previous contempt petitions and on new evidence as to Husband's income and his payment history from the date of the divorce. The court then reviewed its previous arrearage calculations, purporting to do so under OCGA § 9-11-60 (g) (authorizing trial courts to correct clerical errors). Based on evidence that the arrearage calculation in the October 2004 order ($85,676) had been grounded on incorrect information regarding Husband's payment history, the court revised that calculation. In addition, the court found that the subsequent arrearage amount established in the July 2007 order ($66,456) had been calculated based

the Court of Appeals has never considered it.

on incorrect information about Husband's annual income for the applicable time period, and the court thus modified its calculation of that arrearage as well.

In the end, having recalculated the two previously adjudicated arrearages and calculated in the first instance the arrearage dating from the July 2007 order, the trial court arrived at a total arrearage of $119,924.38. Finding Husband in willful contempt, the court ordered him to pay $5,250 immediately as a purge amount and $5,000 quarterly thereafter until the arrearage was paid in full. The court further ordered Husband to purchase a life insurance policy "worth no less than $100,000" within 45 days, listing Wife as the primary beneficiary and the minor children as secondary beneficiaries. Finally, the court ordered Husband to pay Wife $14,000 in attorney fees, under a payment schedule set forth in the order.

In granting the parties' applications for discretionary appeal, we directed the parties to focus on three issues: (1) whether the trial court erred in amending the prior contempt orders; (2) whether the trial court erred in ordering Husband to purchase a life insurance policy; and (3) whether the trial court's award of attorney fees was excessive. We address these issues seriatim.

1. A ruling on a contempt petition, made in writing by a court of competent jurisdiction and entered in accordance with OCGA § 9-11-58, is a conclusive judgment as to the acts of the contemnor that were the subject of the contempt action. See Ramsey v. Ramsey, 231 Ga. 334, 336 (1) (201 SE2d 429) (1973) (an "order adjudging a person in contempt means the trial court has passed upon the merits of the case and the order, in effect, is a final disposition of the contempt matter by that court"); see also Massey v. Massey, 294 Ga. 163 (2) (751 SE2d 330) (2013) (order adjudicating contempt is subject to immediate appellate review). After the entry of such judgment and the expiration of the term of court in which it was entered, the rendering trial court is authorized to amend such judgment only in accordance with OCGA § 9-11-60. See Richard C. Ruskell, Ga. Practice & Procedure, § 23:21 (2015-2016 ed.); Tremble v. Tremble, 288 Ga. 666, 668 (1) (706 SE2d 453) (2011).

Under OCGA § 9-11-60, a judgment, unless void on its face, is subject to challenge in the trial court only by direct attack, in the form of a motion for new trial or a motion to set aside. OCGA § 9-11-60 (a), (b); see also Facey v. Facey, 281 Ga. 367 (6) (638 SE2d 273) (2006). Motions for new trial are available

only to challenge some "intrinsic defect" that does not appear on the face of the record or pleadings, id. at (c), and must generally be made within 30 days of the judgment being challenged, OCGA § 5-5-40 (a). Motions to set aside may be premised on a lack of jurisdiction; some allegation of fraud, accident, mistake, or "acts of the adverse party unmixed with the negligence or fault of the movant"; or a "nonamendable defect" appearing on the face of the pleadings or record. OCGA § 9-11-60 (d). Except for those alleging lack of jurisdiction, such motions must be made within three years of the entry of the challenged judgment. Id. at (f). In addition to these modes of review, the trial court retains the authority to correct "clerical mistakes" and errors "arising from oversight or omission" at any time, either sua sponte or by motion. Id. at (g).

We assess the trial court's orders here under these basic principles. We first find, contrary to Husband's long-standing contention, that the October 2004 order constituted a final judgment of contempt, subject to modification by the trial court only in accordance with OCGA § 9-11-60. Husband asserts that the court's order was infirm, and therefore not final and subject to modification, because its findings as to the arrearage and interest amounts are expressed in the

narrative portion of the order's findings of fact and conclusions of law rather than in its pronouncement of judgment, in which the judgment amount is left blank. However, the order on its face leaves no doubt that the court was entering judgment on Wife's counterclaim for contempt against Husband in the amount of $85,676 in unpaid child support and $35,897.76 in interest. At most, the blank space left for the judgment amount constituted a "clerical error" that would be subject to correction under OCGA § 9-11-60 (g), not an omission that rendered the order invalid or interlocutory. See Tremble, 288 Ga. at 668-669 ("clerical mistake" refers to typographical errors, the omission of words, sentences, or paragraphs, and the like); Cagle v. Dixon, 234 Ga. 698 (217 SE2d 598) (1975) ("clerical mistake" refers to an oversight or omission, either obvious on the face of the record or plainly demonstrated by the evidence). See also Porter-Martin v. Martin, 280 Ga. 150 (625 SE2d 743) (2006) (contrasting the correction of clerical mistakes pursuant to OCGA § 9-11-60 (g) with the modification of substantive provisions). Similarly, the fact that the trial court reserved the issue of a purge methodology until a later date – and that such purge methodology was never ultimately reduced to a written judgment – has no effect on the finality of the determination of Husband's arrearage. See

Hamilton Capital Group, Inc. v. Equifax Credit Information Services, Inc., 266 Ga. App. 1 (1) (596 SE2d 656) (2004) (even where contempt order gives the contemnor the opportunity to purge before punishment is imposed, such order considered final for purposes of appeal). Thus, the October 2004 order was a final adjudication of Husband's total arrearage, including interest, from January 1998 through August 2004.

In its July 2007 order on Wife's second contempt petition, the trial court purported both to adjudicate the arrearage accruing since the October 2004 order and to review the October 2004 order itself. Though clearly empowered to adjudicate the arrearage newly accruing since its prior contempt determination, the trial court lacked the authority to revisit its earlier ruling, as there were no grounds either alleged or established upon which to set it aside. See OCGA § 9-11-60 (d). While the court ultimately reaffirmed the October 2004 order as to the principal amount of Husband's arrearage for January 1998 through August 2004, the court, in effect, vacated the interest portion of the October 2004 order. This elimination of Husband's interest obligation was ostensibly based on representations made at the November 2004 hearing; however,

whatever transpired at that hearing was never reduced to any form of written judgment and thus had no binding effect. See Williams v. Williams, 295 Ga. 113 (1) (757 SE2d 859) (2014) (an oral pronouncement of a trial court is not binding until reduced to writing and entered as a judgment). Accordingly, to the extent the July 2007 order purported to modify the substance of the October 2004 order by eliminating Husband's obligation to pay the $35,897.76 in interest on the original arrearage, this order was in error.

Nevertheless, we have held that a judgment, though erroneous, is entitled to enforcement so long as it was entered by a court of competent jurisdiction and has not been appealed or set aside. See Collins v. Billow, 277 Ga. 604 (2) (592 SE2d 843) (2004) (enforcing contempt order, despite fact that it improperly modified child support obligation, where it was entered by court of competent jurisdiction and had not been reversed or set aside); State ex rel. Harrell v. Harrell, 260 Ga. 202, 202 (391 SE2d 641) (1990) ("[a] judgment which is erroneous but not void may be attacked only by direct appeal or by a motion to set aside" and must be enforced if it has not been so attacked). As there is no question that the trial court here had jurisdiction over the subject matter and the

parties, the July 2007 order, though improper to the extent it modified the October 2004 order by eliminating Husband's interest obligation, is entitled to be enforced in its entirety, unless the October 2009 order is deemed to have properly set it aside.

The October 2009 order, issued in response to the latest in a series of motions filed by Wife due to Husband's repeated non-compliance, in effect vacated both earlier orders and began calculating anew Husband's arrearage from 1998 forward. Though the court purported to do so under OCGA § 9-11-60 (g), its ruling here went far beyond the correction of a "clerical mistake" such as is countenanced by that statutory subsection. See Porter-Martin, 280 Ga. at 151-152 (court cannot modify substantive provisions of prior order under OCGA § 9-11-60 (g)); see also Tremble, 288 Ga. at 668-669; Cagle, 234 Ga. at 699. Rather, the court in effect reopened the evidence regarding Husband's payment history and income dating back to 1998, thus essentially retrying Wife's previous contempt actions far beyond the time period in which such a proceeding was authorized. See OCGA § 5-5-40 (a), (h). This was error. Neither can this re-adjudication of past arrearages qualify as a proper order

setting aside the July 2007 order, as there is no indication that the trial court found the existence of any of the limited grounds to set aside a judgment enumerated in OCGA § 9-11-60 (d). We must therefore reverse the October 2009 order insofar as it purports to re-adjudicate the arrearages as established in the July 2007 order.

As to the arrearage accruing subsequent to the July 2007 order, this issue was properly before the court for disposition in the October 2009 order, and the merits of this determination are thus ripe for appellate review. On review, we must affirm a trial court's adjudication of contempt so long as there is "any evidence" to support it. Facey, 281 Ga. at 370; Pate v. Pate, 280 Ga. 796 (3) (631 SE2d 103) (2006). As there is ample evidence – and, indeed, little dispute – that Husband is seriously delinquent on his child support payments, we affirm the October 2009 order insofar as it found that Husband was in willful violation of his obligations under the parties' divorce decree. Insofar as the court made findings as to the specific amount of the most recently accrued arrearage, however, we hold that those findings rest on an erroneous construction of the parties' divorce decree and, therefore, cannot stand. See Hardigree v. Smith,

13

291 Ga. 239 (728 SE2d 633) (2012) (reversing contempt ruling premised on erroneous construction of husband's alimony obligation).

In adjudicating the arrearage accruing from July 2007 through the October 2009 order, the trial court made findings regarding Husband's income during that interval, on the basis of which the court calculated Husband's child support obligations on a monthly basis. This task was made difficult due to the incomplete and haphazard evidence Husband offered and the apparent variability of Husband's income from month to month – ranging from $0 during periods of unemployment to over $10,000 per month during one six-month period. Though it is clear that the trial court labored diligently in making its calculations, we are constrained to reverse its determination of this last arrearage amount, because it does not conform to the plain language of the child support provisions of the divorce decree. For example, for certain intervals within the relevant time period, the trial court fixed Husband's monthly obligation at $0, based on Husband's unemployment or incarceration. However, nothing in the divorce decree permits a reduction of Husband's monthly obligation to $0; rather, the applicable provisions require Husband to pay at least the established

14

base sum and make no allowance for any reduction to that sum based on a decrease in Husband's income. Thus, to the extent the trial court calculated a $0 obligation for any given month, the court's determination was in error. We therefore reverse that portion of the October 2009 order which adjudicates Husband's arrearage for the period between July 2007 and October 2009, and we remand the case to the trial court to recalculate Husband's arrearage for this latter period in compliance with the language of the parties' divorce decree.

In net effect, the above determinations operate to (1) affirm the arrearage and interest determinations in the July 2007 order as conclusive regarding the amounts owed up until July 2007; and (2) reverse and remand back for a re-calculation, in compliance with the language of the parties' divorce decree, of the arrearage and any interest thereon accruing between that time and October 2009.

2. We now turn to the life insurance provision of the October 2009 order, which requires Husband to obtain a $100,000 minimum life insurance policy within 45 days of the order. As is clear from the transcript from the last of the hearings leading up to the October 2009 order, the trial court intended the

15

insurance policy provision to function as a remedy for Husband's more than $100,000 arrearage. Though it is well-established that a trial court cannot modify the terms of a divorce decree in a contempt proceeding, a trial court is authorized to "'exercise its discretion to craft a remedy for contempt.'" Gooch v. Gooch, 297 Ga. 189 (773 SE2d 247) (2015). See OCGA § 23-4-31 ("[a] superior court shall have full power to mold its decrees so as to meet the exigencies of each case and shall have full power to enforce its decrees when rendered"). Whether a trial court's directive is a valid remedy for contempt as opposed to an improper modification is a fact-intensive inquiry. Compare Froehlich v. Froehlich, 297 Ga. 551 (4) (775 SE2d 534) (2015) (trial court properly imposed accounting and transfer requirements on contemnor who had violated his obligation under a divorce decree to "make available" to his ex-wife one-half of his accumulated hotel loyalty program points); Ziyad v. El-Amin, 293 Ga. 871 (750 SE2d 337) (2013) (trial court properly ordered contemnor to pay down principal on property pending its sale, where contemnor had previously ignored his obligation to list the property for sale and the property would not be salable without such payments); Smith v. Smith, 293 Ga. 563 (1) (748 SE2d 456) (2013) (trial court properly ordered contemnor to pay his ex-

16

wife the monetary value of personal property he had disposed of in violation of divorce decree), with Floyd v. Floyd, 291 Ga. 605 (1) (732 SE2d 258) (2012) (reversing contempt order to the extent it directed ex-husband to execute a quitclaim deed to marital residence as remedy for failing to refinance or list it for sale); Jett v. Jett, 291 Ga. 56 (727 SE2d 470) (2012) (reversing contempt order to the extent it directed the ex-husband, inter alia, to liquidate his accounts to pay down debt on marital residence so as to enable him to fulfill his obligation to refinance the mortgage thereon). In a recent case, we have signaled our approval, in appropriate circumstances, of a trial court's directive that a life insurance policy be purchased as a means of guaranteeing a party's receipt of benefits of which she had been deprived because of actions of the contemnor. Gooch, 297 Ga. at 190-191 (trial court abused its discretion in failing to devise a remedy for contempt, in the form of a directive to purchase life insurance or an annuity, where there was evidence that such measures would constitute a sufficient remedy). In another recent case, however, we reversed a trial court's order directing the ex-wife to purchase a life insurance policy or establish a bank account payable upon her death, as a means of remedying her failure to name the ex-husband as the survivor beneficiary of her pension.

17

Pollard v. Pollard, 297 Ga. 21 (771 SE2d 875) (2015). This outcome was required, we held, because there was no evidence that the life insurance policy or bank account would be "equivalent to" the value of the survivor beneficiary designation. Id. at 24.

Under the above authorities, we conclude that the trial court's effort to craft a means to ensure the payment of Husband's past arrearage might be permissible under the particular circumstances of this case. However, because we are reversing the October 2009 order for a recalculation of Husband's total arrearage, we hereby reverse as to the life insurance provision as well. On remand, we note, any similar remedial provision must be supported by evidence establishing that the specified remedy is of equivalent monetary value as the arrearage it is intended to remedy and is clearly designed to secure pre-existing obligations. Compare Gooch, 297 Ga. at 190-191, with Pollard, 297 Ga. at 24. In addition, any provision requiring the purchase of life insurance would have to make clear that Husband's responsibility to maintain such policy would last only so long as he failed to pay off his arrearage; so structured, a provision of

this kind could constitute a proper remedy for Husband's contempt rather than an improper modification of the parties' divorce decree.

3. Finally, as to the trial court's award of OCGA § 19-6-2 attorney fees, we conclude that the award of $14,000 – less than half of what Wife sought – was not excessive in light of the substantial legal work performed in connection with the latest contempt action, which was necessitated by Husband's persistent non-compliance with his clear obligations to make child support payments and provide the information necessary to determine the amounts owed. The trial court did not abuse its discretion in this regard. See Vines v. Vines, 292 Ga. 550 (4) (739 SE2d 374) (2013) (affirming award of attorney fees incurred in connection with successful contempt motion).

Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur.