**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 14, 2022**

# In the Court of Appeals of Georgia

A21A1805. COWART v. GEORGIA POWER COMPANY.

PHIPPS, Senior Appellate Judge.

This is the second appearance in this Court of this contempt proceeding, which arises out of disputes concerning a Georgia Power easement containing an electric transmission line on the property of defendant Christopher Cowart d/b/a Cowart Tree Experts. In *Cowart v. Ga. Power Co.*, 354 Ga. App. 748 (841 SE2d 426) (2020), Cowart appealed from an order in which the superior court found him in contempt for repeated violations of prior superior court orders, awarded Georgia Power $187,998.99 in damages and fees, and ordered Cowart to comply with various specified safety measures concerning the easement. In that appeal, we vacated the superior court's order and remanded for that court to determine whether it had subject matter jurisdiction over the current contempt proceeding. Id. at 752-753. On remand,

following additional briefing, the superior court ruled that it had subject matter jurisdiction over the proceeding and reinstated its prior contempt order. It is from that order that Cowart now appeals, challenging the superior court's ruling on subject matter jurisdiction and seeking a ruling on the merits of his initial appeal. For the reasons that follow, we affirm the superior court's jurisdictional and contempt rulings.

This appeal arises out of a dispute between the parties dating back to 2002. We set forth the underlying facts in our prior opinion:

In 2002, Georgia Power sued Cowart[,] seeking a restraining order and injunction to prevent Cowart from encroaching and obstructing its [100-foot-wide] easement [that runs through Cowart's property] (the "2002 Action"). This lawsuit resulted in an order in 2002 (the "2002 Order") which provided, in part:

[Cowart] shall remove from the . . . easement area . . . all . . . items which have been placed by [Cowart] on the right-of-way-easement . . . . Except as specifically agreed to by [Georgia Power] in writing, this [c]ourt[ ] hereby enjoins [Cowart] from placing any [obstruction or] operating any machinery . . . on the . . . easement area[. Cowart] is further enjoined from blocking or obstructing the . . . easement area . . . .

2

. . . In 2003, Georgia Power petitioned for contempt, alleging that Cowart continued to dangerously operate equipment [and] place obstructions in the right of way, and undermined the tower that supports the transmission line . . . . The trial court conducted an evidentiary hearing [at which it] found that Georgia Power presented evidence that supported its allegations . . . . The trial court also heard testimony about a contractor of Cowart making contact with Georgia Power's conductors as well as testimony that Cowart's operational practices created a risk of severe injury or death. Accordingly, the trial court found that "a substantial threat to the health and safety of employees, visitors, and others exist[s] as a result of the operations of [Cowart] on the right of way easement . . . ."

As a result of Georgia Power's [2003] contempt petition, the trial court entered another order in 2005 (the "2005 Order"). The trial court ordered the parties to enter an Encroachment Agreement that the parties had negotiated, and it incorporated such agreement into its order. The 2005 Order more specifically identified the restrictions and prohibitions on Cowart's conduct in Georgia Power's easement.

Following entry of the 2005 Order, Georgia Power again petitioned for contempt against Cowart. This petition resulted in the trial court's entry of a 2006 order in the 2002 Action (the "2006 Final Consent Order") which, among other things, appointed a special master to observe Cowart's compliance with the court's prior order and to report violations to the trial court. . . .

In 2012, Georgia Power filed a document titled "Petition for Contempt and Imposition of Sanctions[,]" which sought a finding of contempt of the 2005 Order entered in the 2002 Action (the "2012 Action") . . . .

The relief requested by Georgia Power in its 2012 petition included Cowart's incarceration, fines . . . , an order to permanently remove obstructions from the easement, for the trial court to "[f]ormulate a design for improvements to the right of way so that Defendant Cowart is not able to violate the [c]ourt's order and is physically restrained from contempt including the construction of gates and fencing at [Cowart's] expense," as well as a request that the trial court terminate the previously entered Encroachment Agreement.

After this filing by Georgia Power, the special master issued reports in the 2012 Action finding violations of the 2005 Order, specifically materials being impermissibly stored in the easement. Georgia Power subsequently moved for an emergency hearing on its contempt petition in the 2012 Action as a result of an event on August 15, 2012. On that day, a third-party contractor of Cowart entered Georgia Power's easement with a truck and raised a mounted boom into the energized field surrounding the transmission line. Electricity arced from the line to the boom, causing the front two tires of the truck to blow out. Fortunately, the driver of the vehicle was unharmed. This event caused a regional power outage which resulted in traffic problems, interrupted the dispatch of emergency services, [and caused] regional security systems failures. As a result of an emergency hearing, and upon the agreement of the parties, the trial court entered an order which,

4

among other things, required Cowart to hire an electrical transmission expert to monitor his compliance with the 2005 Order. In 2015, Georgia Power filed another emergency motion for contempt in the 2012 Action, alleging that Cowart's workers were again . . . operating . . . heavy equipment under the transmission line.

Ultimately, in 2018, the trial court entered an order in the 2012 Action finding Cowart in contempt of the 2005 Order (the "2018 Order"). In the 2018 Order[,] the trial court reaffirmed the prior findings of fact, conclusions of law, and injunctions contained in its prior orders entered in the 2002 Action. The trial court found that Cowart "repeatedly and intentionally violated the Orders of [the trial c]ourt . . . designed to protect the property of [Georgia Power] and the lives of all that come onto the easement of Georgia Power." After recounting the numerous violations it found, the trial court stated: "Each of these violations creates conditions that are extremely dangerous and likely to cause irreparable injuries if they are allowed to continue." The trial court concluded that [Cowart's failure to follow its prior orders made it] "necessary for a structure to be built to restrain . . . his business operation . . . from trespassing on the [easement]."

As a result of its finding of contempt, the trial court specifically ordered as follows:

[Cowart] is ordered to install all safety measures shown on the remedial drawing and site plan attached [to the 2018 Order] as Exhibit "A" within forty-five (45) days of the filing of [the] Order. [Cowart] shall be allowed to continue

5

currently-allowed operation for forty-five (45) days during the installation of said safety measures. In the event that said measures are not completely installed within the forty-five (45) day period outlined above, [Cowart] is ordered to cease all activities on [the] easement until installation of the safety measures is completed. This [c]ourt incorporates the legal conclusions expressed in the [2005 Order] as the governing law justifying this remedy.

Should [Cowart] not meet the forty-five (45) day deadline imposed above, subsequent to his installation of such safety measures, [Cowart] shall be allowed to resume activity within the easement area that is in compliance with the prior orders and any written Encroachment Agreements between the parties.

*Cowart*, 354 Ga. App. at 749-752 (capitalization and footnote omitted).

Cowart appealed, and we sua sponte vacated the 2018 Order and remanded with instructions for the superior court to determine whether Georgia Power's 2012 contempt petition constituted "an attempt to improperly commence a new civil action," which, we stated, would have deprived the superior court of "subject matter jurisdiction to hear the matter." *Cowart*, 354 Ga. App. at 753.

On remand, Georgia Power filed a "Motion to Confirm the Jurisdiction of this Court," in which it asked the superior court to find that the court had subject matter

6

jurisdiction over the 2012 contempt petition on the ground that the petition was not a wholly new civil action but rather was a continuation of the prior underlying proceeding that gave rise to the contempt. Georgia Power asserted that its contempt petition could not have been filed under the prior case's docket number because both the Uniform Superior Court Rules ("USCR") and the Gwinnett County Clerk's Office require a new case number to be assigned to a contempt proceeding where, as here, the underlying case has been closed for 30 days. In support of its motion, Georgia Power submitted an affidavit by the Gwinnett County Clerk of Court, who attested as follows:

> If a contempt action is filed in a case which has been closed by our office due to the fact that a final judgment has been entered and the time for appeal has lapsed, then we assign the contempt action a new case number pursuant to Uniform Superior Court Rule 39.2.

> If a contempt action is filed and a new case number is given, it is our office's policy to assign that contempt action to the Division and Judge who entered the final order because it is not a new case, but is a continuation of the prior civil action.

The superior court granted Georgia Power's motion and entered an "Order Establishing Jurisdiction," in which it: (i) concluded that Georgia Power's 2012 contempt petition "was not a wholly new civil action," but rather was a continuation

7

of the prior underlying proceedings; and (ii) reinstated its prior contempt order. This appeal followed.

1. Cowart contends that the superior court erred in finding that it had subject matter jurisdiction over the 2012 contempt petition because, according to Cowart, "not only did [Georgia Power] attempt to initiate a new action, it actually commenced a new action" when it filed the petition. We disagree.

Whether a trial court lacked subject matter jurisdiction is a question of law that we review de novo. *Goddard v. City of Albany*, 285 Ga. 882, 883 (1) (684 SE2d 635) (2009).

> Jurisdiction of the subject-matter does not mean simply jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the *class of cases* to which that particular case belongs. As applied to the subject-matter of a suit, jurisdiction is always conferred by law, and it is incorrect to suppose that the power to decide in any case rests solely on the averments of a pleading, but on the contrary the jurisdiction of a court in no way depends on the sufficiency or insufficiency of the pleadings, and if the pleadings state a case belonging to a *general class* over which the authority of the court extends, then jurisdiction attaches and the court has power to hear and determine the issues involved. If the particular case falls within the general class of which the court has jurisdiction, then it is necessary to look to the particular case to find grounds for ousting the jurisdiction of

8

the court. This is what the courts generally refuse to do. Broadly, they lay down the rule that if the court has the jurisdiction to enter upon the inquiry in respect to the issues involved, then the court has jurisdiction of the subject-matter.

*Nicholson v. State*, 261 Ga. 197, 199-200 (4) (403 SE2d 42) (1991) (citation and punctuation omitted). Importantly, "[a] 'general class' will not be defined by the presence or absence of specific pleadings filed in a specific case." Id. at 200 (5) (a). And it is well settled that "[c]ontempt is part of the judiciary's inherent power to enforce its orders." *Brown v. King*, 266 Ga. 890, 891 (1) (472 SE2d 65) (1996); *Carden v. Carden*, 266 Ga. App. 149, 150 (1) (596 SE2d 686) (2004); accord *In re Siemon*, 264 Ga. 641, 641 (1) (449 SE2d 832) (1994) ("The judicial power to punish for contempt is inherent and enables the courts to perform their functions, including preserving order in judicial proceedings.").

"[A] motion to hold a party in contempt is not a new civil action." *Cook v. Smith*, 288 Ga. 409, 412 (2) (705 SE2d 847) (2010) (citation and punctuation omitted). Rather, "an action for contempt is ancillary to the primary action and, as such, is not a pleading but a motion." *Phillips v. Brown*, 263 Ga. 50, 51 (2) (426 SE2d 866) (1993); *Carden*, 266 Ga. App. at 150 (1); see *Brown*, 266 Ga. at 891 (1) (a contempt action to enforce a prior court order "is an independent proceeding that is

9

ancillary" to the action in which the prior order was entered). In that regard, "[a] motion for contempt is not tantamount to the filing of a complaint," as it "does not come within the definition of a pleading." *Phillips*, 263 Ga. at 51 (2) (citation and punctuation omitted); accord *Opatut v. Guest Pond Club*, 254 Ga. 258, 258 (1) (327 SE2d 487) (1985). And where the proceeding out of which an application for contempt arises remains pending before the trial court, the application should be filed in that proceeding. See *Phillips*, 263 Ga. at 51-52 (2).

Nevertheless, since at least 2012 (when Georgia Power's latest contempt petition was filed), superior court clerks have been required by statute to assign "separate case number[s]" to "all civil actions . . . , including complaints, . . . *contempt actions, motions* and modifications *on closed civil actions*, and all other actions civil in nature except adoptions." OCGA § 15-6-61 (a) (4) (A) (2012) (emphases supplied).[1] And the Uniform Superior Court Rules, since their inception, similarly have required a superior court docket to "contain *separate case number entries* for all civil actions filed in the office of the clerk including: complaints, *motions*, . . . *contempt actions*, . . . and all other actions civil in nature, except

---

[1] The current version of this statute extends the "separate case number" requirement to "any postjudgment proceeding filed more than 30 days after judgment or dismissal in an action." OCGA § 15-6-61 (a) (4) (A) (2021).

10

adoptions." USCR 39.2 (emphases supplied).[2] In that vein, "any postjudgment proceeding filed more than 30 days after judgment or dismissal in an action" is considered "a new case" for purposes of collecting filing fees. OCGA § 15-6-77 (e) (1).[3]

Here, it is undisputed that the underlying action giving rise to Georgia Power's 2012 contempt petition had been closed for more than 30 days when Georgia Power filed the petition. Consequently, OCGA § 15-6-61 (a) (4) (A) and USCR 39.2 required the superior court clerk to assign a new docket number to Georgia Power's 2012 contempt petition. It is axiomatic that this purely administrative requirement cannot transform a post-judgment contempt proceeding into an improper "wholly new action" — otherwise, one could never initiate a post-judgment contempt proceeding. See *Brown*, 266 Ga. at 891 (2) (observing that OCGA § 15-6-77 (e) (1) and USCR 39.2 "deal with administrative matters related to filings in the clerk's office" and

---

[2] That provision has remained unchanged since it became effective in 1985.

[3] That requirement has remained unchanged since 2012, when Georgia Power filed the present contempt petition. Compare OCGA § 15-6-77 (e) (1) (2012), with OCGA § 15-6-77 (e) (1) (2021). The current version of the statute also expressly requires any "new case" under the statute to be "given a new case number." OCGA § 15-6-77 (e) (1) (2021).

11

provide no authority "for a court to designate a contempt motion as a new civil action requiring 30 days notice of a hearing").

Georgia Power's 2012 contempt petition — the initial filing in the current contempt proceeding — is entitled "Petition for Contempt and Imposition of Sanctions," and not "Complaint." The fact that Georgia Power titled this filing a "petition" rather than a "motion" or an "application" is irrelevant — regardless of whether it is technically proper — as it is the substance of the filing that is determinative. See *Planet Ins. Co. v. Ferrell*, 228 Ga. App. 264, 266 (491 SE2d 471) (1997) ("[P]leadings, motions and orders are to be construed according to their substance and function and not merely as to their nomenclature . . . ."); accord *Kuriatnyk v. Kuriatnyk*, 286 Ga. 589, 590 (690 SE2d 397) (2010) (in construing pleadings, substance controls over nomenclature); *Hammer Clinic P.C. v. Crawley*, 169 Ga. App. 522, 523 (313 SE2d 778) (1984) ("Although each of the parties and their counsel, together with the trial judge, seem to call the thing a motion for summary judgment, we are not at all interested in its nomenclature but accept it for what we think it is . . . ."). Notably, the petition expressly referred to the prior proceedings in this ongoing dispute and attached prior superior court orders and related filings in this dispute as exhibits to the petition. A review of the petition and

12

its exhibits thus shows that the petition served to initiate a post-judgment contempt proceeding — rather than a "wholly new action" — over which the superior court retained "inherent power" for the purpose of "enforc[ing] its orders." See *Brown*, 266 Ga. at 891 (1).

Further, as discussed above, the necessary administrative assignment of a new trial court docket number to a contempt petition does not transform such a petition into a "wholly new" civil action.[4] See generally OCGA §§ 15-6-61 (a) (4) (A); 15-6-77 (e) (1); USCR 39.2. Viewed in this context, the fact that Georgia Power sought and obtained an unnecessary summons directed to Cowart in conjunction with the filing of the 2012 contempt petition (as it also did in 2003) has no bearing on whether

---

[4] We note that Georgia Power's 2012 contempt petition was not the first filing given a new docket number in these proceedings. In 2002, Georgia Power's complaint was docketed as case no. 02-A-10531. Georgia Power's 2003 motion for contempt was assigned case no. 03-A-07239. On a related note, *Alexander v. Gibson*, 300 Ga. 394, 395-396 (794 SE2d 597) (2016), briefly relied on by Cowart, does not change the result here. In *Alexander*, the Supreme Court held that the version of OCGA § 15-6-77 (e) (1) (which governs the assessment of costs in civil actions) in effect at the time did not prohibit a party from filing a post-judgment motion to compel discovery under the docket number of a case in which judgment was entered more than 30 days prior. 300 Ga. at 395-396. Importantly, the majority opinion in *Alexander* did not address OCGA § 15-6-61 or USCR 39.2. See generally id. at 394-396. We therefore read *Alexander* as limited to its facts and procedural posture — i.e., a specific request by a party to file a post-judgment motion to compel discovery under the same docket number as the action in which the prior judgment was entered — and, as a result, inapplicable here. See id.

13

the superior court had "jurisdiction of the *class of cases*" to which a contempt action belongs, particularly where, as here, it is clear from the face of the petition that enforcement was sought of one or more prior orders entered by the superior court in prior proceedings between the parties to the petition. See *Nicholson*, 261 Ga. at 199 (4); see also generally *Brown*, 266 Ga. at 891 (1). For similar reasons, the fact that Georgia Power checked the box for "Equity" rather than "Non-Domestic Contempt" on the administrative General Civil Case Filing Information Form it submitted with its contempt petition does not change the substance of its request for a finding of contempt arising out of the prior underlying proceedings between these parties. See *Kuriatnyk*, 286 Ga. at 590; *Planet Ins. Co.*, 228 Ga. App. at 266; *Hammer Clinic P.C.*, 169 Ga. App. at 523; see also generally *Carden*, 266 Ga. App. at 149 (contempt is an "equitable remedy"); id. at 154 ("A procedural technicality should not prohibit a court of equity from dispensing justice.") (Mikell, J., concurring specially).

All in all, we conclude that Georgia Power's actions in filing the 2012 contempt petition establish not that it intended to initiate a "wholly new action" but rather that it sought merely to comply — even if inartfully — with the less-than-intuitive statutory, regulatory, and administrative requirements governing the

14

assignment of case numbers in post-judgment proceedings.[5] We therefore affirm the superior court's ruling that it had subject matter jurisdiction over the 2012 contempt petition.

2. The parties dispute whether we may now address the merits of Cowart's challenges to the 2018 Order. In that regard, Georgia Power contends that Cowart has abandoned any challenges it may have to the substance of the 2018 Order by failing to raise any such arguments in its initial brief in this appeal. Cowart, on the other

---

[5] Because a trial court retains "inherent power" to "enforce its orders" in contempt proceedings, *Brown*, 266 Ga. at 891 (1), and because a request for the trial court to hold an opposing party in contempt is, by its very nature, "not a new civil action," *Cook*, 288 Ga. at 412 (2) (citation and punctuation omitted), but is rather "ancillary to the primary action" and therefore "not tantamount to the filing of a complaint,"*Phillips*, 263 Ga. at 51 (2) (citation and punctuation omitted), we question the proposition (underlying this Court's ruling in *Cowart*, 354 Ga. App. at 752-753) that a party's "attempt to improperly commence a new civil action" by filing a petition for contempt could deprive a trial court of *subject matter* jurisdiction to adjudicate the petition. See *Nicholson*, 261 Ga. at 199 (4) ("if the pleadings state a case belonging to a *general class* over which the authority of the court extends, then jurisdiction attaches") (citation and punctuation omitted). While the sufficiency of *service* of an application for contempt potentially may implicate issues concerning *personal* jurisdiction, see generally *Dennis v. Dennis*, 302 Ga. App. 791, 794 (2) (692 SE2d 47) (2010); *Chavarria v. Jackson*, 194 Ga. App. 414, 414-415 (390 SE2d 613) (1990); *Berger v. North American Co.*, 146 Ga. App. 475, 476-477 (3) (246 SE2d 716) (1978), no such question is before us in this proceeding. Nevertheless, because we affirm the superior court's ruling that no improper attempt to start a new action occurred here, we leave for another day whether to revisit our ruling in *Cowart*, 354 Ga. App. at 752-753.

15

hand, maintains that, if we affirm the superior court's ruling on subject matter jurisdiction, the arguments raised by the parties in their briefs in the prior appeal are now ripe for review.

Notably, in our prior decision in this case, we stated, "If . . . the trial court determines that Georgia Power properly filed a motion which was merely assigned a 2012 case number by the clerk of court, then subject matter jurisdiction exists and *this Court may subsequently consider the merits of the appeal*." *Cowart*, 354 Ga. App. at 753 (emphasis supplied). We did not, however, give the parties clear guidance as to whether it would be necessary to re-brief Cowart's substantive challenges to the 2018 Order in an ensuing appeal. Regardless, we note that neither party suggests that (a) these issues were not fully briefed in the prior appeal, (b) factual developments since the prior appeal warrant additional briefing, or (c) either party will be prejudiced by addressing these issues in this appeal. The parties also do not cite any authority barring us from addressing these issues on the peculiar circumstances presented here. Consequently, in the interests of justice and judicial economy, we turn to Cowart's substantive challenges to the 2018 Order.

3. Cowart contends that, in the 2018 Order, the superior court impermissibly modified the terms of the 2005 Order by requiring him to erect barriers on his

16

property. In that regard, he maintains that the most recent superior court order pre-dating Georgia Power's 2012 contempt petition — the 2006 Final Consent Order — did not put him on notice that a violation of its terms could result in such a "drastic sanction," but rather delineated other potential penalties for non-compliance. We disagree.

Under OCGA § 23-4-31, "[a] superior court shall have full power to mold its decrees so as to meet the exigencies of each case and shall have full power to enforce its decrees when rendered." "And the discretion of the judges of the superior courts in all matters pertaining to contempt of their authority and mandates will never be controlled unless grossly abused." *Wyatt Processing v. Bell Irrigation*, 298 Ga. App. 35, 35-36 (679 SE2d 63) (2009) (citation and punctuation omitted). "Thus, while a trial court is not authorized to modify [a prior] decree within a contempt proceeding, *it may exercise its discretion to craft a remedy for contempt*, including remedying harm caused to an innocent party by the contemptuous conduct." *Smith v. Smith*, 293 Ga. 563, 564 (1) (748 SE2d 456) (2013) (citation and punctuation omitted; emphasis supplied); accord *Sutherlin v. Sutherlin*, 301 Ga. 581, 582 (802 SE2d 204) (2017) ("The trial court in a contempt case has wide discretion to determine whether its orders have been violated. The court is not authorized to modify a previous decree in

17

a contempt order, but it is always empowered to interpret and clarify its own orders.")

(citations and punctuation omitted); *Ziyad v. El-Amin*, 293 Ga. 871, 872 (750 SE2d

337) (2013) ("[A] court can craft a remedy for contempt, including remedying harm

caused to an innocent party by the contemptuous conduct.") (citation and punctuation

omitted).[6] "The test to determine whether an order is clarified or modified is whether

the clarification is reasonable or whether it is so contrary to the apparent intention of

the original order as to amount to a modification." *Kaufmann v. Kaufmann*, 246 Ga.

266, 268-269 (3) (271 SE2d 175) (1980); accord *Kirkendall v. Decker*, 271 Ga. 189,

191 (516 SE2d 73) (1999). In that regard, "[t]he trial court has the power to see that

there be compliance with the intent *and spirit* of its decrees[,] and no party should be

permitted to take advantage of the letter of a decree to the detriment of the other

party." *Kaufmann*, 246 Ga. 269 (3) (citation and punctuation omitted; emphasis

supplied).

As discussed above, in the 2005 Order, the superior court required the parties

to enter an Encroachment Agreement attached to the order. The court also, inter alia,

---

[6] For purposes of this appeal, we assume without deciding that the proposition that a court may not modify a prior decree in a contempt order applies in contexts other than divorce decrees, although neither party has identified any Georgia appellate decisions to that effect.

18

enjoined Cowart from (a) "storing any materials, obstructions, equipment or other debris" in the easement (with two exceptions not relevant here), (b) operating any equipment more than 15 feet above ground level in the easement, and (c) allowing other parties to access the easement. Importantly, the 2005 Order further provided as follows:

> In the event [Cowart] violates the terms of this Order, penalties shall be enforced against [Cowart,] including the payment of any attorney's fees incurred by [Georgia Power,] as well as a fine up to $10,000.00 per day for any violation. In the event that there is a second violation of the terms of this Order granting Injunctive Relief, the Court shall retain the right to [im]pose additional fines and penalties and if less substantial evidence is presented to justify the continued violation of the Court's order, *the Court will consider terminating all privileges of [Cowart] to utilize the right of way* of [Georgia Power].

(Emphasis supplied.)

The superior court's authority to require the parties to take actions necessary to terminate Cowart's privileges to use the right of way following multiple violations of the 2005 Order is necessarily implied in that order. See, e.g., *Smith*, 293 Ga. at 564 (1) (where the husband removed from the martial home personal property previously awarded to the wife in a divorce decree, the trial court did not abuse its discretion in

19

a later contempt proceeding by awarding the wife the monetary value of the removed property, as that relief was "made necessary by husband's refusal to obey the original decree" and "remedied the harm caused by husband's contemptuous conduct"); *Kaufmann*, 246 Ga. at 268-269 (3) (concluding that a divorce decree provision requiring the husband to keep in repair a home awarded to the wife authorized the trial court to order the husband to pay $15,000 to the wife for repairs and obtain the services of a supervising engineer); see also generally *Ziyad*, 293 Ga. at 872-873 (enforcing obligation that, though not expressly stated in divorce settlement agreement, was necessarily implied from its terms); *Floyd v. Floyd*, 291 Ga. 605, 610 (2) (732 SE2d 258) (2012) (same); cf. *Sutherlin*, 301 Ga. at 583 (I) (where a settlement agreement incorporated into a divorce decree requires one to make mortgage payments, inferring a duty to make those payments on time does not constitute an improper modification).

Also as discussed above, the superior court's 2006 Final Consent Order appointed a special master to conduct ongoing inspections of the easement to evaluate Cowart's compliance with the 2005 Order and report any violations of that order to the superior court. Consequently, under the plain terms of the 2006 Final Consent Order, the 2005 Order necessarily remained in full force. For that reason, Cowart

remained on notice that multiple violations of the 2005 Order could result in termination of his access to the right of way. And while the construction of a barrier was not explicitly identified as a means to accomplish that end in the 2005 Order, it necessarily follows that a barrier is a reasonable way to accomplish that result, if not the most likely way to do so. Thus, by conditioning Cowart's continued access to the easement on his construction of a barrier, "the court below did not modify or rewrite the [the 2005 Order], but rather properly allowed [Cowart] to purge himself by complying with its terms." See *Floyd*, 291 Ga. at 611 (2) (citation and punctuation omitted).

In its 2018 Order, the superior court found that Cowart had committed multiple violations of the 2005 Order (a ruling that Cowart does not challenge on appeal). As a result, the court properly conditioned Cowart's continued access to the easement — following 45 days of the order — on his construction of a structure that will "restrain his activities so that his business operation is physically restrained from trespassing on the property rights of [Georgia Power]." We find no abuse of discretion — much less a *gross* abuse of discretion, see *Wyatt Processing*, 298 Ga. App. at 36 — by the superior court in crafting this relief to remedy the harm caused to Georgia Power (and, potentially, to the greater community) by Cowart's years-long ongoing

contemptuous conduct. See *Ziyad*, 293 Ga. at 872; *Smith*, 293 Ga. at 564 (1). We therefore affirm the superior court's ruling in this regard.[7]

4. Finally, Cowart asserts that the 2018 Order provision requiring him to build a barrier is in the nature of an impermissible criminal contempt sanction, as it is unconditional and gives him no opportunity to purge.[8] We again disagree.

"The purpose of civil contempt is to *provide a remedy* and to obtain compliance with the trial court's orders." *Smith*, 293 Ga. at 564 (1) (citation and punctuation omitted; emphasis supplied). "The distinction between criminal and civil contempt is that criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of *coercing future compliance* with a prior court order." *Cabiness v. Lambros*, 303 Ga.

---

[7] Cowart's passing, conclusory assertion that the 2005 Final Order conditioned the imposition of remedies other than fines and attorney fees on a finding by the superior court that Cowart presented "less substantial evidence" to justify its ongoing violations of prior court orders misreads the 2005 Final Order. The 2005 Order requires no such explicit finding to be memorialized in a written order — it rather only conditions the imposition of additional remedies on Cowart's failure to present such evidence. By fashioning the remedy at issue here, the superior court implicitly — but necessarily — found that Cowart failed to present such evidence, and Cowart does not dispute that it failed to do so.

[8] Although Cowart briefly refers to the other penalties imposed in the 2018 Order, he challenges only the barrier-construction requirement.

App. 253, 255 (1) (692 SE2d 817) (2010) (citation and punctuation omitted; emphasis supplied); accord *Grantham v. Universal Tax Systems*, 217 Ga. App. 676, 677-678 (2) (458 SE2d 870) (1995).

> [B]efore a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him, and the command must therefore be express rather than implied. Indeed, the very nature of the proceeding in either civil or criminal contempt for an alleged disobedience of a court order requires that the language in the commands be clear and certain.

*Cabiness*, 303 Ga. App. at 255 (1) (citations and punctuation omitted).

As discussed above in Division 3, read as a whole, the 2018 Order does not unconditionally require Cowart to build a barrier on his property; it rather gives him the option of building the barrier or staying completely out of the easement.[9] For that reason, Cowart's claim that the barrier-construction provision constitutes an impermissible unconditional criminal contempt sanction with no opportunity to purge is misplaced, pretermitting whether (as Cowart suggests) that provision properly may be deemed a "sanction" or "punishment" in the first place (rather than a remedy for

---

[9] Simply stated, the 2018 Order gives Cowart two options for purging his contempt: he can either build the barrier or stay out of the easement.

harm to Georgia Power).[10] And as also discussed in Division 3, Cowart was on clear notice that multiple violations of the 2005 Order could result in termination of his access to the easement and that the superior court necessarily would be authorized to craft a remedy to effectuate that result, as it did here. See generally *Ziyad*, 293 Ga. at 872; *Smith*, 293 Ga. at 564 (1).

Cowart's related argument that the superior court impermissibly "skipp[ed]" several "conditional sanctions" and "removed the conditional purge provision" misreads the 2005 Order. The plain terms of the 2005 Order authorized the superior court to consider terminating Cowart's access to the easement upon a "second violation" of the order. Notably, this provision was triggered by a "second violation," not by a *second finding by the superior court* of one or more violations. And Cowart

---

[10] Even if the barrier-construction provision arguably could be partially deemed a "sanction," when viewed in context with the entirety of the proceedings between the parties, it nevertheless is clear that the provision's primary purpose is to provide a meaningful remedy to Georgia Power by coercing Cowart's future compliance with prior court orders barring him from storing materials, operating machinery, and undermining the transmission line tower in the easement. See *Smith*, 293 Ga. at 564 (1); *Cabiness*, 303 Ga. App. at 255 (1); see also *Cowart*, 354 Ga. App. 749-750; *Grantham*, 217 Ga. App. at 678 (2) (statutory limits on criminal contempt sanctions do not apply to sanctions for civil contempt, *the purpose of which is to deter future violations* of court orders).

24

does not challenge the superior court's findings in the 2018 Order that he committed multiple violations of the 2005 Order.

For these reasons, and for the reasons stated above in Division 3, Cowart has not shown that the superior court grossly abused its discretion in crafting a reasonable, appropriate remedy — when viewed in context with the entirety of these years-long proceedings and Cowart's repeated failures to adequately address the safety concerns at issue here — to coerce Cowart's future compliance with the court's prior orders. We therefore affirm the superior court's contempt rulings.

*Judgment affirmed. Rickman, C. J., and McFadden, P. J., concur.*