FINAL COPY
294 Ga. 421

S13A1862.  DORITIS v. DORITIS.

THOMPSON, Chief Justice.

Victor Doritis (husband) appeals from a trial court's judgment on a petition for contempt filed by his former wife, Mabel (wife), and his counterclaim for contempt arising out of their divorce action.  For the reasons that follow, the judgment of the trial court is affirmed in part and reversed in part.

Husband and wife were divorced in March 2012 by a final divorce decree incorporating the parties' settlement agreement.  Several months later, wife filed a petition for contempt alleging husband had failed to turn over to her certain items of jewelry contained in a basement safe which she claims should have been divided pursuant to the terms of the decree.  Husband counterclaimed for contempt, arguing that wife had failed to comply with the decree's parenting and visitation provisions and had failed to reimburse him for repairs made to the marital home.  The trial court refused to hold either party in contempt but found that pursuant to the terms of the final decree, the parties had agreed to a

distribution of property giving wife her jewelry from the safe and ordered husband to return these items to wife. Acknowledging husband's admission that he already had sold certain of the items, the court further ordered that "[i]n the event [husband] is unable to return all pieces of jewelry, but returns selective items, said items shall be appraised by a mutually agreed upon certified appraiser and the amount of the appraisal shall be subtracted from the amount [husband] owes ($40,000) to [wife] for reimbursement of the jewelry." The court also directed the parties to submit for the court's review a list of disputed expenses, if any, for repairs to the marital home.

1. Husband contends the portion of the trial court's order directing him to return the jewelry to wife constitutes an improper modification of the final divorce decree. The final decree provides with regard to personal property that the parties would attempt to reach an agreement, and in the event they were unable to do so, a specifically identified third party would make the final distribution.[1] After hearing testimony and reviewing e-mails between the parties

[1] The decree provides, in pertinent part:
Marital Home: Household Goods, Furniture, Furnishings, Artwork, and Personal Effects.
The parties will attempt to equally divide all household goods, furnishing, and personal effects in the Marital Home to his and her mutual satisfaction. . . . If

2

regarding the division of the safe's contents, the trial court determined the parties had reached an agreement as to distribution of the jewelry and ordered husband to immediately return these items to wife or provide her with compensation for the items he admittedly sold. This ruling does not impermissibly modify the decree inasmuch as the trial court simply found that the parties entered an agreement regarding the contents of the safe, which they were authorized to do under the plain terms of the final decree, and entered an order enforcing the decree, which it clearly was authorized to do. See OCGA § 23-4-31; Hamilton v. Hamilton, 292 Ga. 81 (1) (734 SE2d 355) (2012); Hudson v. Hudson, 220 Ga. 730 (141 SE2d 453) (1965).

Contrary to husband's argument, it does not matter that the contents of the safe were not included in a videotape of household goods created by the parties during the divorce proceedings because nothing in the decree indicates that the videotape was intended as an exclusive inventory of personal property to be

---

an agreement is not reached then the parties will complete a list of all personal property contained in the residence (as evidenced in the videotaped inventory in 2011) with an estimated value next to each item. This list will be provided to Ms. Grossman as a final arbitrator on the division of property. Each party will provide to Ms. Grossman their preferred selection of items, then Ms. Grossman will provide to the parties a final distribution of said items.

divided. Similarly, we do not find the absence from the decree of a specific reference to the safe's contents to be determinative. The decree was sufficiently specific as to the procedure to be followed in dividing personal property to apprise the parties of what was required of them, and the trial court's order merely applies that procedure to the personal property at issue. This is not a circumstance, therefore, where property was not covered by the decree and the court went beyond an interpretation of the decree in an action for contempt to determine ownership of the property. Compare Buckley v. Buckley, 239 Ga. 433, 434 (238 SE2d 238) (1977).

2. Husband argues that even if the trial court was authorized to enter an order pertaining to the distribution of the jewelry, there was no credible evidence to support the trial court's valuation of the items. At the contempt hearing, however, wife identified from an inventory prepared by the parties each piece of jewelry they had agreed belonged to her and estimated that these items had an aggregate value of $40,000. The trial court found this evidence, which was not disputed by husband at the hearing, to be credible and valued the

jewelry at issue at $40,000.[2]  Because husband already had sold some of the items of jewelry, which therefore could not be independently appraised, the trial court's order directs that the value of the missing items be determined by subtracting the appraised value of the items still in husband's possession from the $40,000 aggregate value.  Thus, there is evidence in the record supporting the trial court's value determination, and the trial court's order provides a reasonable method by which the value of the missing jewelry shall be determined.  Although under different circumstances other methods of valuation may have been preferable, the difficulty in obtaining such evidence in this case was caused by husband's spiriting away of the property.  Given the circumstances, we find no error in the trial court's method of determining the value of the items sold by husband in violation of the decree.

3.  Relying on a provision in the final decree entitling husband to reimbursement for "repairs" made to the marital home while it was listed for sale, husband asserted in his counterclaim for contempt that wife owed him for expenses he incurred for document shredding, light bulbs, housekeeping and

---

[2]  Husband's claim that the trial court deprived him of the opportunity to present evidence and argument on the issue of valuation is not supported by the record.

landscaping. The trial court denied this ground of husband's petition, concluding that the parties did not intend "repairs" to include the general household expenses claimed by husband. Husband argues that the trial court's interpretation of the term "repair" constitutes an improper modification of the decree.

Although a trial court lacks authority to modify a divorce decree within a contempt proceeding, it may interpret or clarify such decree in the course of resolving contempt issues properly before it. Killingsworth v. Killingsworth, 286 Ga. 234, 236 (686 SE2d 640) (2009). The test for determining "whether a trial court's ruling constitutes a proper clarification or impermissible modification of a divorce decree is whether the clarification [or interpretation] is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification." (Citation and punctuation omitted.) Cason v. Cason, 281 Ga. 296, 297 (1) (637 SE2d 716) (2006). The controlling principle to be applied when interpreting a divorce decree which incorporates the parties' settlement agreement is to "find the intent of the parties by looking to the 'four corners' of the agreement and in the light of circumstances as they existed at the time the agreement was made. [Cit.]" Ward v. Ward, 236 Ga. 860,

6

861 (226 SE2d 52) (1976).

The challenged provision provides only that husband shall be entitled to a credit or payment for repairs made to the marital home while it was listed for sale.[3] It says nothing to suggest an intent by the parties to reimburse husband for expenses related to his general maintenance or use of the home such as those asserted in his counterclaim. Accordingly, we conclude the trial court's interpretation of the decree is reasonable and not so contrary to the intention of the parties as to amount to a modification.

4. The final decree specifies that the net proceeds from the sale of the marital home shall be divided equally between the parties, but it makes no provision for the time within which such proceeds must be distributed. Nowhere in the decree does it indicate that these proceeds would be held until the parties had fulfilled their other obligations under the decree. Nevertheless, the trial court included in its contempt order a provision directing that the net proceeds from the sale of the marital home shall not be distributed until husband

---

[3] This provision states that "husband will attempt [to] make repairs to the marital residence and continue to list said residence for sale. In the event husband makes any repairs, . . . husband shall receive a credit/payment for said payments from the sale of the residence before any net profits are divided by the parties."

7

returned the jewelry to wife or provided her with adequate compensation for the items sold. We agree with husband that this was an improper modification of the final decree. Although the trial court had broad authority to enforce and seek compliance with its original decree, OCGA § 23-4-31, it could not do so by imposing upon husband a pre-condition to his receipt of the net proceeds that did not exist in the original decree. Accordingly, we reverse that portion of the trial court's order withholding husband's share of the net proceeds until he returned the jewelry to wife or provided her with adequate compensation for the missing items.

5. By the terms of the final decree, husband and wife were given joint legal custody of their minor child with wife having primary physical custody. Due to the child's age, she was almost 16 at the time of the divorce, the parties agreed husband was to have visitation "as the minor child and [h]usband mutually agree." Husband contends the trial court abused its discretion by failing to hold wife in contempt for her alleged failure to abide by the terms of the divorce decree related to parenting and visitation. He also argues that the trial court erred by failing to exercise its supervisory authority over the child's decision to discontinue visitation. See Worley v. Whiddon, 261 Ga. 218 (403

SE2d 799) (1991); Prater v. Wheeler, 253 Ga. 649, 650-651 (322 SE2d 892) (1984).

At the hearing, wife presented evidence demonstrating that she had not violated the visitation provisions of the decree because it was the child who elected not to visit with husband, and pursuant to the decree, visitation was to take place only when it was mutually agreeable to both husband and the child. The trial court's refusal to hold wife in contempt of the final decree with regard to visitation, therefore, is supported by the record, and we find no abuse of discretion in this ruling of the trial court. See Horn v. Shepherd, 292 Ga. 14 (4) (732 SE2d 427) (2012) (trial court's ruling on contempt will be affirmed on appeal if there is any evidence to support it). The fact that the relationship between husband and the child may have deteriorated to the point that the child does not wish to visit with husband does not, by itself, demand the conclusion that wife has engaged in contemptuous conduct.[4]

In addition, we find the trial court properly exercised its authority over the

---

[4] Although husband argues he was denied the opportunity to present evidence at the hearing, including evidence of parental alienation, the record does not support this claim. At no point during the hearing did husband offer to present or proffer testimony, expert or lay, on any issue, and he made no request for a continuance to allow him to do so.

child's decision not to attend counseling or visit with her father. The trial court interviewed the child, who by the time of the contempt hearing was 17-years old, and determined, based on the child's age, the child's wishes, the circumstances of the divorce, and the absence of any evidence that wife was interfering with visitation, that compelled counseling or visitation with husband would not be in the child's best interest. The trial court thus considered the evidence before it, together with the child's wishes, and properly exercised its discretion. See Worley, supra, 261 Ga. at 219.

Judgment affirmed in part and reversed in part. All the Justices concur.

———

HUNSTEIN, Justice, concurring.

I concur fully in Divisions 1, 2, 3, and 5 of the majority opinion. As to Division 4, I also concur but do so only because the trial court declined to find husband in contempt. Had the trial court found husband in contempt for selling the jewelry which the trial court found the parties had agreed would be awarded to wife, I would affirm the trial court's authority to require that husband comply

10

with his obligations regarding the jewelry prior to receiving any proceeds from the sale of the marital residence. See OCGA § 23-4-31 ("[a] superior court shall have full power to mold its decrees so as to meet the exigencies of each case and shall have full power to enforce its decrees when rendered"); Smith v. Smith, 293 Ga. 563, 565 (1) (748 SE2d 456) (2013) (affirming trial court's authority to deviate from the letter of the divorce decree as necessary to "remed[y] the harm caused by husband's contemptuous conduct").

            Decided January 21, 2014.

Domestic relations. Fulton Superior Court. Before Judge Shoob.

Christine M. Stadler, for appellant.

Michael J. O'Hagan, Christy C. Thomann, for appellee.