In the Supreme Court of Georgia

Decided: October 5, 2015

S15A0965. MERMANN v. TILLITSKI.

MELTON, Justice.

Sanna Mermann, formerly known as Sanna Tillitski (Wife), and Christopher Tillitski (Husband) were divorced in Bibb County pursuant to a decree signed on February 24 and filed on February 26, 2009. The divorce decree incorporated a settlement agreement that stated, in relevant part:

> [W]ife shall receive 50% of the Husband's SEP IRA[1] as of the date of this agreement and shall have her pro rata share of all investment experience, including earnings and losses. . . . Wife shall be responsible for the preparation of a Qualified Domestic Relations Order (QDRO) incorporating the terms of all paragraphs in Item 14 said QDRO to be prepared within thirty (30) days of the signing of this Agreement.[2] Said QDRO shall be subject to approval of Husband's attorney and the Court of proper jurisdiction in this case, as well as the Administrator(s) of the aforementioned Plan.

---

[1] The parties and the trial court appear to agree that there are actually multiple SEP IRAs at issue.

[2] The settlement agreement attached to the divorce decree is not dated, but the parties agreed that the signing date should be deemed to be the date the decree was signed, February 24, 2009.

More than four years later, Wife submitted a QDRO to the trial court, which signed it on November 29, 2012. Wife claimed the long delay was caused by Husband's failure to give her necessary information and documents. On July 19, 2013, after realizing that Husband had not seen the QDRO, Wife filed a motion asking the court to vacate the QDRO and enter one approved by Husband. Husband agreed that the QDRO should be vacated, asserting that some of the information in it was incorrect.

At the hearing on Wife's motion held on July 9, 2014, Husband argued that Wife should not receive any earnings on her portion of the IRAs that accrued after March 26, 2009 — the date 30 days after the settlement agreement was signed by which she was supposed to have prepared the QDRO. Husband claimed that the 30-day deadline imposed on Wife was meant to limit her ability to benefit from the accounts' investments and that she should not be allowed to profit from her failure to comply with the divorce decree. The trial court agreed with Husband, and on August 25, 2014, entered an order vacating the QDRO, setting March 31, 2009 as the "date of calculating gains and losses to the total value of the SEP IRAs as of February 24, 2009," and requesting that the parties

submit an amended QDRO within 30 days that "calculat[ed] [new] figures in accordance with [the trial court's] Order." Wife appeals from this ruling,[3] and, for the reasons that follow, we reverse the trial court's determination that March 31, 2009 is the proper "date [for] calculating gains and losses to the total value of the SEP IRAs as of February 24, 2009," and remand the case for a more proper consideration of the parameters of any new QDRO to be submitted by the parties.

"The controlling principle to be applied when interpreting a divorce decree which incorporates the parties' settlement agreement is to find the intent of the parties by looking to the 'four corners' of the agreement and in the light of circumstances as they existed at the time the agreement was made." (Citations

---

[3] Wife filed a timely discretionary application seeking to appeal the trial court's order, which this Court granted on October 15, 2014. Husband contends that Wife's discretionary application was "improvidently granted" because the trial court's August 25, 2014 order was not yet final, in that the parties must still draft and submit an amended QDRO to the trial court. For this reason, Husband believes that Wife was required to follow the interlocutory appeal provisions of OCGA § 5-6-34 (b) and seek a certificate of immediate review, which she did not. However, Husband is incorrect, as the finality of a divorce decree is not affected by the presence or absence of a QDRO. The divorce decree here is final, and the absence of a QDRO to be entered at a later date does not make the order interlocutory.

3

and punctuation omitted.) Doritis v. Doritis, 294 Ga. 421, 423 (3) (754 SE2d 53) (2014). Further, just as it is in the case of an equitable allocation of property by a trial court, where, as here, the division of property has been "determined by settlement [agreement] . . ., the division of the parties' marital property and the identification of the parties' separate property set forth in a divorce decree is *fixed*, and the trial court does not have the power to modify those terms of the judgment even if the circumstances of the parties change." (Footnote omitted; emphasis supplied.) White v. Howard, 295 Ga. 210, 211-212 (2) (758 SE2d 824) (2014).

With these principles in mind, the plain language of the parties' settlement agreement makes clear that Wife was entitled to "receive 50% of the Husband's SEP IRA as of the date of th[e] agreement and shall have her pro rata share of all investment experience, including earnings and losses." Although the agreement also states that Wife was tasked with preparing a QDRO within thirty days, there is nothing in the agreement to suggest that if Wife did not prepare a QDRO within that time frame that she would not receive any earnings on her portion of the IRAs that accrued after 30 days from the date of the agreement. Indeed, there is no language in the settlement agreement indicating that Wife's

4

failure to prepare a QDRO would affect her right to "have her pro rata share of all investment experience" in the SEP IRAs in any way. By holding otherwise and imposing an artificial 30-day window for Wife to "calculat[e] gains and losses to the total value of the SEP IRAs as of February 24, 2009," the trial court improperly modified a fixed division of property as set forth in the parties' settlement agreement.[4] See id. We must therefore reverse the trial court's decision and remand this case with the direction that the trial court reconsider its ruling in light of the plain language of the parties settlement agreement as outlined above.

Judgment reversed and case remanded with direction. All the Justices concur.

---

[4] We note that, in this regard, if Husband were concerned that Wife had violated the divorce decree by having failed to timely submit a QDRO, his remedy would be to pursue an action for contempt. See generally, e.g., Millner v. Millner, 260 Ga. 495  (397 SE2d 289) (1990). However, even if Husband were to succeed in a contempt proceeding, (and we make no ruling on the potential merits of any such action here), the trial court still would not be authorized to modify the terms of divorce decree as a remedy for Wife's alleged contempt. See, e.g., Ziyad v. El-Amin, 293 Ga. 871 (750 SE2d 337) (2013) ("It is settled law, of course, that a court cannot modify a final decree of divorce on a motion for contempt") (citation omitted).