**THIRD DIVISION
DOYLE, P. J.,
BROWN, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 5, 2023**

# In the Court of Appeals of Georgia

A22A1442. GUVEN v. GUVEN.

DOYLE, Presiding Judge.

Keriman Guven ("the Wife") and Sabri Guven ("the Husband") were divorced in 2021. As part of the equitable division of property, the divorce decree awarded the Wife some real property but required her to sell it under certain conditions, including giving the Husband a time-limited right of first refusal. After a dispute, the Husband filed a motion for contempt challenging the terms and method of a potential sale to a third party. The trial court entered an order finding that the Wife had not violated the divorce decree, but the court held that (1) the Husband's right of first refusal had not expired, and (2) the Wife could not seek or accept a higher bid on the property. The Wife now appeals, and based on the wording of the final divorce decree and the facts before us, we affirm.

The undisputed record shows that the couple had accumulated substantial assets after running a jewelry company. Among other things, the divorce decree awarded the Wife sole ownership of a parcel of commercial real estate ("K&S Property"), and it awarded the Husband the business located on that property.[1] To avoid an ongoing landlord-tenant relationship between the divorcing parties, the decree required the Wife to sell the property according to the following process:

> 3) As soon as practicable, Wife shall place the K&S Property on the market for sale at an opening price of $6,750,000[] and shall sell the K&S Property on commercially reasonable terms.

> . . .

> 7) Wife may not refuse any offers that are at or higher than the current listing price. In the event of competing offers, Wife shall be permitted a reasonable time after receipt of an offer to solicit higher offers.

> 8) Husband may make an offer to purchase the K&S Property, and he may use the K&S Property as collateral in connection with any financing to fund such purchase.

---

[1] The Husband's jewelry business operated on the K&S Property, and he wished to remain a tenant on the property.

9) Husband is granted the right of first refusal on the K&S Property. Upon receipt of any offer by a third party to purchase the K&S Property ("Offer"), Wife shall, within five (5) days, give written notice of the offer to Husband, along with a copy of the Offer. Husband shall have fifteen (15) days after receipt of said notice to notify Wife whether he is exercising his Right of First Refusal to purchase the Property pursuant to a purchase agreement which incorporates the terms and conditions of the Offer.

10) Wife shall not be permitted to purchase the K&S Property, either directly or indirectly. Wife is prohibited further from selling the K&S Property to (i) any relative, by blood, marriage or otherwise; (ii) any individual with whom she shares a personal relationship; (iii) any individual or entity to whom she owes a debt; (iv) any individual or entity from whom she is owed a debt; (v) any [entity] in which she owns an interest, directly or otherwise, and (vi) any individual or entity that owns an interest in or operates a business similar to that of the [Husband's jewelry business operating on site].

11) Upon the closing of the sale of the K&S Property, and irrespective of who the purchaser is, Wife shall be entitled to one hundred percent (100%) of the proceeds of the sale.

12) In the event a dispute arises regarding a proposed purchaser or the terms of any offer to purchase the K&S Property, the parties shall bring the dispute to the attention of the [c]ourt, and this [c]ourt shall be the arbiter of said dispute.

Soon after the divorce was finalized in December 2021, the Wife entered into a 20-page purchase and sale agreement with an entity called AP Commercial Investments, LLC ("APCI").[2] The agreement listed a sale price of $8,000,000, along with other details of the transaction, and provided that it would go into effect upon the expiration of the Husband's right of first refusal. The Husband received the agreement on January 27, 2022, so his 15-day window to exercise his right of first refusal began on that day and was scheduled to end on February 11, 2022.

The transmittal to the Husband did not provide any context for the agreement, so on January 31, 2022, the Husband's counsel emailed a letter to the Wife's counsel asking for the identity of the members of APCI, in light of the divorce decree's requirement that the Wife not sell the property to a friend or relative. The next day, the Wife's counsel responded that "Ms. Guven is not violating the Court's decree/judgment. . . . Is Mr. Guven exercising his [right of first refusal]? Please advise." Later that evening, the Husband's counsel again asked for clarification on the "simple question. If you know the identity of the members of [APCI], please share

---

[2] The Wife executed the agreement as an authorized signatory of the company holding the property.

4

them. If you do not know the members, which would be perfectly reasonable, please advise."

On February 11, 2022 (the day his option was scheduled to expire), without further assurances regarding the nature of the proposed sale to APCI, the Husband filed an Emergency Motion for Contempt of Court in the superior court. He alleged his belief that the Wife was possibly connected to the registered agent of APCI and questioned the proposed $8,000,000 purchase price in light of a recent appraisal at $4,350,000. The Wife filed a response three days later, and on February 15, the trial court held a hearing and orally ordered the Wife to disclose the members of the APCI and allowed certain other limited discovery by the Husband. The court also scheduled a second evidentiary hearing, held on March 10, at which two witnesses connected to APCI testified.

Based on the evidence and argument from those hearings, on March 17, 2022, the trial court entered an order finding that the Wife's proposed sale to APCI did not violate the terms of the divorce decree. But the court also made two additional holdings. First, the court held that the Husband's time to exercise his right of first refusal, which would have expired on February 11, 2022, had not expired because he filed his contempt action on that day, thereby tolling the time for him to exercise that

right until the contempt action was resolved. Therefore, the order provided that the Husband could exercise his right of first refusal until 5:00 p.m. on the date of entry of the order. Second, the court held that the divorce decree did not authorize the Wife to seek additional offers after the Husband exercised his right of first refusal.

Based on the trial court's order, it is undisputed that the Husband sent a written notice to the Wife's counsel that he was exercising his right of first refusal at the $8,000,000 APCI contract price. This Court granted the Wife's application for discretionary review of the contempt order.

1. The Wife argues that the superior court erred by ruling that the Husband's February 11 deadline was tolled by his filing of the contempt motion. Specifically, she points to the rule that after a final divorce decree, "[a] trial court has no authority, in a contempt proceeding, to modify [the] final judgment and divorce decree." Thus, she argues that the trial court's extension of the Husband's right of first refusal until after it resolved his contempt motion improperly modified the February 11 deadline in the final decree. But in light of the wording of the decree and the facts of this case, we disagree.

> [T]he trial court in a contempt case has wide discretion to determine whether its orders have been violated. The court is not

6

authorized to modify a previous decree in a contempt order, but it is always empowered to interpret and clarify its own orders. . . . *While a trial court has authority to interpret divorce decrees in deciding contempt issues placed before it, the inquiry on appeal is whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification.* It is the function of the court to construe the contract as written and not to make a new contract for the parties.[3]

As noted above, the divorce decree ordered the Wife to sell the property under certain conditions aimed at ensuring that the sale is a bona fide, arm's length transaction with an unrelated third party. And once the Husband received notice of such a proposed sale, he had 15 days to exercise a right of first refusal on the terms of that offer. Importantly, the decree also explicitly provided that in the event of a dispute about the purchaser's qualification or the terms of sale, "the parties shall bring the dispute to the attention of the [trial court], and [the trial court] shall be the arbiter of the dispute."

Based on this procedure, the trial court held that when the Husband filed his contempt motion raising an issue with the proposed sale, which was reasonable at the

---

[3] (Citations and punctuation omitted; emphasis supplied.) *Vaughn v. Vaughn*, 365 Ga. App. 195, 198 (1) (877 SE2d 860) (2022).

time in light of the lack of transparency regarding APCI, he essentially paused the clock on his 15-day right of first refusal. Once the trial court resolved the issue and the Wife had satisfied the court that the sale to APCI would not violate the divorce decree, it started the clock and gave the Husband until the close of business on the fifteenth day to exercise his option. This approach is consistent with the apparent intention of the divorce decree to procure a timely sale to a bona fide third party and allow the Husband a 15-day period to exercise a right of first refusal.

Notably, the divorce decree itself was explicit that disputes be brought to the court for resolution. Thus, this is not a case in which "the court [improperly] attempted to impose reasonable solutions for contingencies about which the [decree] was silent," by supplying terms in conflict with the divorce decree.[4] Instead, the court honored this provision for the parties to have disputes resolved by the court in a meaningful way. It would frustrate the Husband's rights under the decree if he were required to exercise his right of first refusal on uncertain terms without first being able to obtain a resolution by the court regarding the viability of the offer triggering

---

[4] Id. at 199 (1).

his right of first refusal.[5] It is unrealistic to suggest that such a process would resolve within 15 days, particularly in light of the fact that the resolution depended on the gathering of additional evidence and holding an evidentiary hearing with witnesses testifying before the trial court. We therefore decline to construe the decree as providing for dispute resolution but requiring the Husband to act before the dispute is resolved. Finally, aside from the pendency of the contempt action, the trial court gave the Husband no more time than allowed by the decree.

Under these circumstances, the trial court's construction of the decree was not "so contrary to the apparent intention of the original order as to amount to a modification."[6] The procedure it followed here gave effect to both the Husband's 15-day deadline as well as the parties' ability to have disputes resolved by the trial court as provided by the divorce decree. "The court's determination was a reasonable clarification because it was consistent with the intent and spirit of the final decree. To

---

[5] Cf. *Cason v. Cason*, 281 Ga. 296, 297 (1) (637 SE2d 716) (2006) ("[N]o party should be permitted to take advantage of the letter of a decree to the detriment of the other party.") (punctuation omitted).

[6] (Punctuation omitted.) *Vaughn*, 365 Ga. App. at 198 (1).

rule otherwise would leave Husband with an illusory or meaningless"[7] right to challenge an unauthorized sale by the Wife.

2. The Wife also contends that the superior court erred by ruling that she could not use the Husband's right of first refusal to solicit additional, higher bids on the property. We disagree.

The divorce decree outlined the scope of the Husband's right of first refusal as follows:

> Husband is granted the right of first refusal on the K&S Property. Upon receipt of any offer by a third party to purchase the K&S Property ("Offer"), Wife shall, within five (5) days, give written notice to Husband, along with a copy of the Offer. Husband shall have fifteen (15) days after receipt of said notice to notify Wife whether he is exercising his Right of First Refusal to purchase the Property pursuant to a purchase agreement *which incorporates the terms and conditions of the Offer*.[8]

Under a plain reading of this provision, the Husband was granted the right of first refusal on an offer received by the Wife. The Husband is authorized to exercise his right under an agreement that "incorporates the terms and conditions of the

---

[7] *Cason*, 281 Ga. at 298 (1).

[8] (Emphasis supplied.)

10

Offer," i.e., the specific offer that triggered his right of first refusal. Thus, the Husband's right to buy the property at the terms of the offer is triggered by the offer itself. At that point, the Wife could not solicit other offers because doing so would render meaningless the Husband's right of first refusal under the terms of the original "Offer" that triggered his right of first refusal.

Further, under the terms of the divorce decree, the "Wife may not refuse any offers that are at or higher than the current listing price" of $6,750,000. Thus, this was not a situation in which she was granted the right to induce a bidding war with the Husband. She was allowed to seek higher offers only "[i]n the event of competing offers," which did not happen here. The Husband's right of first refusal is not an "offer;" rather, it is his right to execute a purchase at the price of an offer already made.[9] "[A] right-of-first-refusal holder who has exercised the 'ripened' option is generally entitled to specific performance of the new contract formed by acceptance of the option — that is, *the right holder can compel the owner to sell on whatever*

---

[9] See *Hasty v. Health Svc. Centers, Inc.*, 258 Ga. 625, 626 (373 SE2d 356) (1988) ("The person holding the right of first refusal must be offered the opportunity to buy when the owner decides to sell[.]") (punctuation and emphasis omitted).

11

*terms the option provided.*"[10] Accordingly, the trial court did not err by ruling that the Wife could not leverage the Husband's right of first refusal to obtain yet another higher offer.

In summary, based on the wording of the divorce decree and the circumstances of this case, we discern no reversible error.

*Judgment affirmed. Brown, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[10] (Emphasis supplied.) *Milner v. Milner*, 363 Ga. App. 69, 73 (1) (a) (870 SE2d 584) (2022).