**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 17, 2023**

# In the Court of Appeals of Georgia

A22A1443. SMITH v. SMITH.

DILLARD, Presiding Judge.

Cherise Smith appeals the trial court's grant of Kenneth Smith's motion to amend a provision in their then-current divorce decree regarding her entitlement to a portion of his military retirement benefits. Specifically, Cherise argues the trial court erred as a matter of law by adopting Kenneth's proposed amended decree because, in doing so, it impermissibly and substantively amended the provision at issue. For the reasons explained *infra*, we vacate the trial court's judgment and remand the case with direction.

Cherise and Kenneth were married in May 1989, and divorced in 2012. A provision of their initial 2012 divorce decree was titled "Military Pension" and provided, in relevant part, as follows:

The marital portion of [Kenneth's] military retired pay is subject to equitable division as a marital asset. [Cherise] is entitled to a share of [Kenneth's] military retirement benefits and [he] hereby agrees to assign to [Cherise] a portion of his entitlement under the military retirement plan ("the Plan"), earned as a result of his service with the United States Navy, as set out more specifically below . . .

[Kenneth] agrees to assign [Cherise] forty percent (40%) of the marital share of his "disposable retired pay" (as defined by the Uniformed Services Former Spouses' Protection Act) each month. The marital share of [Kenneth's] disposable retired pay is found by multiplying the total disposable retired pay by a fraction where the numerator is 223 (the number of months of [Kenneth's] military service while married to [Cherise]) and the denominator is the total months of [Kenneth's] military service whether married or not.

In other words, [Cherise's] portion of the plan may be determined in accordance with the following formula:

40% x [Kenneth's] disposable retired pay at retirement x

# months married while *[Kenneth] in military (223)*

Total # months [Kenneth] in military.

This decree also provided that: "The [c]ourt shall retain jurisdiction to amend or modify this Order to the extent necessary or appropriate to clarify, establish[,] or

maintain the status of this Order as an award of military retirement payments, and the parties agree to cooperate in making such necessary or appropriate changes."

Thereafter, the parties discovered certain military regulations require that, in a divorce decree, the length of military service must be expressed in terms of years, instead of months. So, in 2015, Cherise filed a motion to set aside or, in the alternative, clarify the 2012 divorce decree to make this required change. On February 29, 2016, the trial court entered an amended divorce decree making the requested change, and in doing so, noted that both parties agreed to the amended decree.

In relevant part, the provision quoted *supra* was amended as follows:

[Kenneth] agrees to assign [Cherise] forty percent (40%) of the marital share of his "disposable retired pay" (as defined by the Uniformed Services Former Spouses' Protection Act) each month. The marital share of [Kenneth's] disposable retired pay is found by multiplying the total disposable retired pay by a fraction where the numerator is 19 (the number of *years* of [Kenneth's] military service while married to the [Cherise]) and the denominator is the total *years* of [Kenneth's] military service whether married or not. [Cherise] is awarded forty percent (40%) of the disposable military retired pay [Kenneth] would have received had [he] become eligible to receive military retired pay with a retired base pay of $ (dollar amount for 04/LCDR) and with "X" reserved retirement points on August 7, 2012.

In other words, [Cherise's] the portion of the plan may be determined in accordance with the following formula:

40% x [Kenneth's] disposable x *19 years* = [Cherise's] portion monthly retired pay at Retirement military retirement pay

Total # of *years* [Kenneth] in the military

All remaining terms, conditions[,] and provisions of the parties Final Judgment and Decree of Divorce, not otherwise modified herein, shall remain in full force and effect.[1]

But at some point following the entry of the 2016 amended decree, Kenneth switched from active naval duty to reservist duty, retired from service as a reservist, and began to receive retirement benefits. Then, in 2019, after Cherise learned Kenneth was receiving those benefits, she filed an application with the Defense Finance and Accounting Service ("DFAS") to receive her share as provided for in the 2016 amended divorce decree. Shortly thereafter, she was notified that her application was invalid. Specifically, the DFAS letter explained that Kenneth retired as a reservist, and his retired pay was based on "the number of points earned" (*i.e.*, "reservist points"). As a result, DFAS could not use the formula in the 2016 amended decree to calculate the amount of benefits she was owed because "the court order

---

[1] (Emphasis supplied).

must state the numerator [of the formula] as the number of [reservist] points earned during the marriage." And because retired pay does not accrue or vest, "[i]t is based strictly on service points and rank for the reservist." The letter went on to instruct Cherise that, in order for her to receive her allotted portion of Kenneth's retirement benefits, she must "obtain a certified copy of a clarifying order awarding either a fixed amount or a percentage of [Kenneth's] retired/retainer pay, or which provides a formula wherein the only missing element is the denominator (total points earned by a reservist) [(*i.e.*, reservist points)]."

In January 2022, Cherise filed a motion seeking another modification of the original divorce decree, requesting that Kenneth be held in contempt and claiming she was entitled to reasonable attorney fees.[2] As an exhibit to the motion, Cherise attached a proposed order, modifying the military retirement benefits provision (quoted *supra*) to replace all references in the applicable formula from the number of years Kenneth served in the military with the number of reservist points.

---

[2] Cherise references her 2022 motion as one for a third amendment to the 2012 divorce decree, even though the military retirement provision was only revised once before in 2016. This is because the trial court entered a prior amended divorce decree in 2013 that did not relate to the retirement provision. Thus, the motion underlying this appeal sought a third amendment to the parties' divorce decree.

Kenneth filed a response in opposition to Cherise's motion, asserting several affirmative defenses. Relevant here, Kenneth contended "it is clear that the language used in the divorce decree and amended divorce decree [as to his military benefits] is just wrong." Kenneth also provided a proposed amended divorce decree, which he claimed "would appropriately award [Cherise] forty percent (40%) of [his] retirement pay based upon the amount he would have drawn at the time the [initial] [d]ivorce [d]ecree was entered . . . ."

After a hearing on the parties' respective motions, the trial court issued an amended divorce decree, striking the provision at issue and adopting the language used in Kenneth's proposed order. Specifically, the provision was amended as follows:

> [Kenneth] agrees to assign [Cherise] forty percent (40%) of the marital share of his "disposable retirement pay" (as defined by the Uniformed Services Former Spouses' Protection Act) each month. [Cherise] is awarded forty percent (40%) of the disposable military retired pay [Kenneth] would have received had [he] become eligible to receive retired pay on the date he attained age 60 with the rank of 04, LCDR, with 4,744 reservist retirement points, and with 19 years of service for basic pay purposes.

6

Unlike the prior two military-benefit provisions, this provision did not include a formula for calculating the amount of Kenneth's military retirement pay to Cherise. Instead, it provided for a set percentage of Kenneth's retired pay that he *would have earned* under a particular hypothetical set of circumstances. Following this Court's grant of Cherise's application for a discretionary appeal, this appeal follows.

In two enumerations of error, Cherise contends the trial court erred by substantively modifying the 2016 amended divorce decree, rather than merely amending its language such that it complied with DAFS requirements. We agree.

When a trial court makes a modification to a divorce decree, its determination will not be disturbed on appeal in the absence of an abuse of discretion.[3] Further, in the context of contempt proceedings following the entry of a divorce decree, the Supreme Court of Georgia established a standard for determining whether a trial court has improperly modified the decree, and we see no reason not to apply the same standard in this context.[4] Specifically, our Supreme Court held that "[t]he trial court

[3] *See Cason v. Cason*, 281 Ga. 296, 297 (1) (637 SE2d 716) (2006) (reviewing a trial court's modification of a divorce decree in a contempt proceeding for an abuse of discretion).

[4] While Cherise initially moved the trial court to hold Kenneth in contempt for violating the relevant provision in the divorce decree, this appeal does not concern that issue.

7

has the power to see that there be compliance with . . . its decrees[,] and no party should be permitted to take advantage of the letter of a decree to the detriment of the other party."[5] And the Supreme Court further explained that "[t]he test for distinguishing permissible interpretations and clarifications from impermissible modifications is whether the clarification or interpretation is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification."[6]

In considering a modification or clarification of a divorce decree, we look to "the nature of the asset the trial court awarded to [the spouse at issue] to determine whether it is equivalent to the asset the parties bargained for in their divorce proceedings."[7] In other words, if it was "in essence the same asset, the court did not

---

[5] *Killingsworth v. Killingsworth*, 286 Ga. 234, 236 (2) (686 SE2d 640) (2009) (punctuation omitted); *see Blair v. Blair*, 272 Ga. 94, 96 (1) (527 SE2d 177) (2000) (explaining that a trial court "has the authority to interpret and clarify a court order").

[6] *Killingsworth,* 286 Ga. at 236 (2) (punctuation omitted); *accord Cason*, 281 Ga. at 297 (1).

[7] *Cason*, 281 Ga. at 297 (1); *see Pollard v. Pollard*, 297 Ga. 21, 23 (771 SE2d 875) (2015) ("[W]e look to the nature of the asset the trial court awarded to determine whether it is equivalent to the asset awarded in the divorce proceedings. If it was in essence the same asset, the court did not improperly modify the terms of the decree, but merely construed the relevant provision to determine the intent of the decree." (punctuation omitted)).

improperly modify the terms of the agreement, but merely construed the relevant provision to determine the intent of the parties when they entered into the original [decree]."[8] But conversely, if the court used the proceeding to "substantially alter the final decree, it amounted to an unauthorized modification."[9] Indeed, our Supreme Court has acknowledged "the firm rule we have established against modifying the property division provisions of a final divorce decree."[10] And because these provisions "equitably divide marital property between the parties, . . . we have not allowed trial courts later to compel a party who was awarded a specific asset to sell or otherwise convert that asset in order to comply with some other provision of the decree."[11]

---

[8] *Cason*, 281 Ga. at 297-98 (1); *accord Pollard*, 297 Ga. at 23.

[9] *Cason*, 281 Ga. at 298 (1); *accord Pollard*, 297 Ga. at 23.

[10] *Darroch v. Willis*, 286 Ga. 566, 570 (3) (690 SE2d 410) (2010); *see Spivey v. McClellan*, 259 Ga. 181, 182 (378 SE2d 123) ("Fixed allocations of economic resources between spouses, those that are already vested or perfected, are not subject to modification by the court . . . .").

[11] *Darroch*, 286 Ga. at 570-71 (3); *accord Floyd v. Floyd*, 291 Ga. 605, 606 (1) (732 SE2d 258) (2012).

Turning to the instant dispute, military regulations provide that divorce decrees may issue a "formula award" of retirement benefits or a "hypothetical award[,]" and provide examples of each. Specifically,

> [a] *formula award* is usually expressed in terms of a marital fraction, where the numerator covers the period of the parties' marriage while the member was performing creditable military service, and the denominator covers the member's total period of creditable military service. The former spouse's award is usually calculated by multiplying the marital fraction by ½ or 50%. However, the parties can provide a different percentage.[12]

These regulations also provide several examples of acceptable formulas to calculate this type of award, including the following:

> The former spouse is awarded a percentage of the disposable military retired pay, to be computed by multiplying [the chosen percentage] times a fraction, the numerator of which is ___ months of the marriage during which the member's creditable military service, divided by the member's total number of months of credible military service.

Military regulations also explain how to issue a hypothetical award. Specifically, a hypothetical retired pay award

---

[12] (Emphasis supplied).

is an award expressed as a percentage of a hypothetical retired pay amount that is different from the member's actual retired pay. If the court order uses a hypothetical award, it is usually figured as if the member had retired on the date of separation or divorce. . . . A hypothetical award does not give the former spouse the benefit of any of the member's pay increases due to promotions or increased service time after the divorce**.**

As to reservists, the regulations provide examples of language used to effectuate a hypothetical award. One example of such language is as follows:

The former spouse is awarded ___ % of the disposable military retired the member would have received had the member become eligible to receive retired pay on the date he [or she] attained age 60, with the rank of _____, with ____ reserve retirement points, and with ____ years for basic pay purposes.

Here, Cherise argues that, in entering the 2022 amended decree, the trial court erred by modifying the military benefits to issue a hypothetical award of retirement benefits, rather than a formula award, as set forth in both the 2012 and 2016 decrees. And she contends that such a modification was impermissible because it substantively altered the provision. Having reviewed the 2016 and 2022 amended divorce decrees, we agree.

The original 2012 divorce decree, as well as the 2016 amended decree, set forth a specific formula to calculate the retirement benefits award. But in the 2022 amended decree, the relevant provision was significantly altered to provide for a *hypothetical* award, rather than a formula award. Indeed, the 2022 provision is nearly identical to the military regulations' examples of a hypothetical award involving a reservist. And just like the example detailed *supra*, the 2022 amended decree awarded Cherise a fixed percentage of the disposable military retired pay Kenneth *would have* received under a hypothetical set of circumstances. This hypothetical scenario bears no relation to the specific formula set forth in the 2016 amended divorce decree.

Significantly, the military regulations provide an example of a reservist *formula* award similar to the one in the 2016 amended decree as follows:

> The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by *multiplying* ____ % times a fraction, the *numerator* of which is ____ reserved retirement points earned during the period of the marriage, *divided by* the member's total number of reserved retirement points earned.[13]

One significant difference between the hypothetical award in the 2022 amended decree and the formula award in the 2016 decree is that the formula award factors in

---

[13] (Emphasis omitted and emphasis supplied).

Kenneth's total number of years in the military, *whether married or not*, as the denominator in the formula to determine Cherise's marital share of benefits. In stark contrast, the hypothetical award provides that Cherise would be entitled to a flat 40 percent of qualifying benefits, presuming Kenneth served 19 years in the military during the marriage. Simply put, other than awarding Cherise 40 percent of the qualifying benefits, the trial court's 2022 hypothetical award bears almost no relation to the formula award contained in the 2016 amended decree. And there is no evidence or analysis in the court's order to support a conclusion that the 2022 hypothetical award is equivalent to the 2016 formula award.[14]

Nevertheless, citing certain statements made by his counsel during a hearing in the 2012 divorce proceedings, Kenneth maintains the "record is clear that the bargained for benefit between the parties at the time of the divorce was for [Cherise] to receive forty percent (40%) through the date of the divorce[,]" which he contends is the "marital share." But the term "marital share" is specifically defined in the 2016 amended decree, and it is not defined simply as 40 percent of Kenneth's retirement

---

[14] *See Pollard*, 297 Ga. at 24 (holding the trial court erred in modifying a divorce decree to require wife's estate to confer a $50,000 asset to him upon her death, rather than naming him as a beneficiary with survivorship rights to her pension (as required by the divorce decree) when there was no evidence or analysis in the court's order to support a conclusion that the two awards were equivalent).

13

benefits through the date of the divorce. To the contrary, according to the 2016 amended decree, "[t]he marital share of [Kenneth's] disposable retired pay is found by *multiplying* the total disposable retired pay by a fraction where *the numerator* is 19 (the number of years of [Kenneth's] military service while married to the [Cherise]) and *the denominator* is the *total years* of [Kenneth's] military service *whether married or not*."[15]

Kenneth further argues that averments made in Cherise's pleadings, e-mails, and statements made by her counsel also confirm the parties only intended for her to receive 40 percent of the retirement benefits he earned during the marriage. But regardless of language used during oral arguments below, in e-mails sent by counsel, or in written pleadings, Kenneth points to no language in the 2016 divorce decree to support his contention. In failing to do so, he ignores that "[t]he controlling principle to be applied when interpreting a divorce decree . . . is to find the intent of the parties by looking to the 'four corners' *of the agreement* and in the light of circumstances as they existed at the time the agreement was made."[16] Indeed, when a contractual term

---

[15] (Emphasis supplied).

[16] *Mermann v. Tillitski*, 297 Ga. 881, 883 (778 SE2d 191) (2015) (punctuation omitted and emphasis supplied); *accord Doritis v. Doritis*, 294 Ga. 421, 423 (3) (754 SE2d 53) (2014).

of a settlement agreement incorporated into a divorce decree is "clear, unambiguous, and capable of only one interpretation as written, the plain meaning of the provision must be strictly enforced."[17] And while Kenneth maintains the language used in the 2012 and 2016 decrees was "just wrong," he has never asserted that the plain language of the relevant provision in the 2012 and 2016 decrees was ambiguous, and as a result, the parties are bound by it.[18]

In sum, the 2022 amendment to the parties' divorce decree "improperly modified the terms of the agreement, [instead of] merely constru[ing] the relevant provision to determine the intent of the parties when they entered into the original [divorce decree]."[19] And because the trial court used the proceeding to "substantially alter the final decree, it amounted to an unauthorized modification."[20] Thus, we vacate

---

[17] *Floyd*, 291 Ga. at 609 (2) (punctuation omitted); *accord Page v. Baylard*, 281 Ga. 586, 587 (1) (642 SE2d 14) (2007).

[18] *See supra* note 17 & accompanying text.

[19] *Cason*, 281 Ga. at 297-98 (1); *see Greenwood v. Greenwood*, 289 Ga. 163, 164 (709 SE2d 803) (2011) ("It is the function of the court to construe [a divorce decree] *as written* and not to make a new contract for the parties." (punctuation omitted and emphasis supplied)).

[20] *Cason*, 281 Ga. at 298 (1); *see Floyd*, 291 Ga. at 606 (1) (holding the trial court erred by improperly amended a divorce decree when it ordered husband to convey certain property to wife when the divorce decree did "not specify that the

the trial court's 2022 amended divorce decree, and remand the case for further proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. Mercier and Markle, JJ., concur.*

---

marital residence [was] to be conveyed to [wife] if [husband] fail[ed] to comply with his obligation to either refinance or list it" (which he did)); *Greenwood*, 289 Ga. at 165 ("[T]he trial court improperly modified the divorce decree by converting [h]usband's penalty for failure to remove [w]ife from the mortgage by an explicitly-stated deadline into a lien on the marital residence."); *Darroch*, 286 Ga. 570-72 (3) (holding the trial court improperly modified a divorce decree when it ordered husband to sell property that he was awarded in the initial decree in order to satisfy $15,000 he owed wife under "another component of the decree" because the initial decree did not contain a provision regarding the sale of the home); *Killingsworth*, 286 Ga. at 236-37 (2) (holding the trial court improperly modified a divorce decree when it ordered husband to pay wife $1,850 in lieu of transferring half of his 401 (k) funds to her, as required by the initial divorce decree). *Cf. Cason*, 281 Ga. 298 (1) (holding the trial court was "authorized to trace the value of wife's interest in the equity accounts for the years 1987 to 1993, to the stock and cash which husband received in lieu thereof when [the relevant company] converted to a publicly held company . . ." because, in doing so, it made a reasonable clarification consistent with . . . the final decree).

16